JAMES H. TEASDALE ET AL., Plaintiffs in Error, v. WILLIAM B. MCPIKE, Defendant in Error.

25 341
34 309
35 400
25 341
53 274

St. Louis Court of Appeals, April 5, 1887.

1. CONTRACTS—OPTION DEALS—ILLEGALITY, HOW DETERMINED—FACTORS—BURDEN OF PROOF.—To render ' invalid, as between factor and principal, a contract for the purchase of grain, it must be shown that all the contracting parties contemplated that there should be no actual delivery, and the burden of proof is on him who asserts that the transaction is illegal.

2. PRINCIPAL AND AGENT—ESTOPPEL.—If an agent who exceeds his authority at once report that fact to his principal, requesting a reply, the principal's silence until the delay has caused a loss will estop him from denying his agent's authority.

ERROR to the Pike County Circuit Court, ELIJAH ROBINSON, Judge.

*Reversed and remanded.*

SMITH & HOSTETTER, for the plaintiffs in error: A principal who is informed of an unauthorized act of his agent, must give notice of his dissent within a reasonable time or his assent will be presumed. 1 Wait's Actions and Defences, 234; *Botkin v. McIntyre*, 81 Mo. 557; *Pelkington v. Ins. Co.*, 55 Mo. 178; Wharton on Cont., sect. 6. There was no evidence that the transaction was a wager. *Cockrell v. Thompson*, 85 Mo. 510.

CLARK & TAPLEY, for the defendant in error: The agent must implicitly and strictly obey the order of his principal. If he violates instructions, he does so at his peril. *Lewin v. Dille & Avery*, 17 Mo. 64; *Railroad v. Stephens*, 36 Mo. 150; 1 Parsons on Cont. 51; *Butts v. Phelps*, 79 Mo. 302; Greenleaf Evid., sect. 201, note 2; Story on Agency [9 Ed.] sect. 24, note 2. It was a clear case of gambling. Option deals have been declared

to be "merely this and nothing more." *Johnson v. Kaune et al.*, 21 Mo. App. 22; *Cockrell v. Thompson*, 85 Mo. 509; *Williams v. Tiedeman*, 6 Mo. App. 275; *Waterman v. Buckland*, 1 Mo. App. 45; *Buckingham v. Fitch*, 18 Mo. App. 91; *Fareira v. Gabell*, 89 Pa. St. 89.

.Rombauer, J., delivered the opinion of the court.

This is an action to recover $681.25, claimed to be due by the defendant to the plaintiffs, for money advanced in the purchase of wheat, including their commissions.

The petition states, in substance, that the plaintiffs are commission merchants in the city of St. Louis; that on August 3, 1885, they bought, upon the defendant's request and on his account, ten thousand bushels of wheat, paying therefor, inclusive of their commissions, $10,343.75; that wheat thereafter declined in price in the St. Louis market, and it became necessary for the defendant to advance certain sums of money to secure the plaintiffs from loss, on account of moneys advanced by them in the original purchase; that they demanded from the defendant, at various times, a deposit to secure them from loss, and the defendant, refusing to comply with their demand, or to respond thereto in any manner, they sold the wheat on his account August 15, 1885, for $9,652.50, and rendered the defendant an account, showing the balance sued for as due to them.

The defendant denied each and every allegation in the petition; and, further answering, stated that, on the third day of August, 1885, he requested the plaintiffs to purchase ten thousand bushels of September wheat, in words and figures as follows, to-wit:

"Bowling Green, Mo., August 3, 1885.
"*J. H. Teasdale & Company*, *St. Louis, Mo.*

"Buy ten thousand Sept. wheat, and sell at three-fourths advance.

"W. B. McPike."

That the plaintiffs failed and refused to buy September wheat, but bought October wheat, which the defendant did not want, and did not authorize.

The defendant, further answering, said that the whole of said sale was an option sale; that he ordered the plaintiffs to buy ten thousand bushels of September wheat, for future speculation; that not a bushel of said wheat was delivered, and it was never expected, intended, or desired, by either the plaintiffs or the defendant, that any such wheat should ever be delivered ; that said transaction was an option deal, and the debt, to enforce which this suit is instituted, is a gambling debt, absolutely void, and against public policy.

To this answer the plaintiffs replied as follows :

"The plaintiffs deny each and every allegation in the answer not in the reply admitted to be true.

" And, further replying, say that it is true, that, on the third of August, 1885, the defendant ordered the plaintiffs by wire to buy ten thousand bushels of September wheat; that it was not a suitable or favorable time to buy September wheat, and, acting in good faith and for the best interests of the defendant, they purchased ten thousand bushels of October wheat, that is, wheat to be delivered in the month of October, at $103\frac{1}{8}$ and at $103\frac{1}{4}$, and immediately notified the defendant of that fact, and that they would change it to September, if the defendant preferred. The defendant made no objection to said purchase of October wheat, but, on the contrary, acquiesced in, consented to, and ratified said purchase, and made no objection for a long time thereafter, and until wheat had declined in price."

It is necessary to set out the pleadings fully, in order to show the bearing of the instructions, and to determine whether the plaintiffs' complaint is just, that the court misdirected the jury, and thereby led them to find a verdict for the defendant.

The plaintiffs gave evidence tending to support every fact stated in their petition and reply.

It appeared, among other things, that, on August 3, 1885, the defendant wired to the plaintiffs the following message :

"Bowling Green, Mo , August 3, 1885.
" *To J. H. Teasdale & Co., St. Louis, Mo.*

"Buy ten Sept. wheat, and sell at three-fourths advance.                               W. B. McPike."

To this message the plaintiffs replied by wire on the same day :

" *To W. B. McPike.*

"Bought ten Oct. at three and one-eighth and quarter, instead of Sept. If you prefer the Sept., will change.                          J. H. Teasdale & Co."

The plaintiffs, on the same day, also wrote to the defendant, advising him in detail of their reasons for buying the wheat for October, instead of September, delivery. The defendant admitted the receipt of both telegram and letter, and, upon the trial, stated as his only excuse for not replying to either, that it was none of his business.

Matters remained in this state until August 13, wheat steadily declining in price. On that day the defendant wrote to the plaintiffs, without making mention of this transaction. To this letter the plaintiffs replied, and again offered to change the purchase from October to September delivery, if the defendant so desired. Thereupon the defendant addressed to the plaintiffs the following letter :

"Bowling Green, Mo., Aug. 14, 1885.
" *Messrs. J. H. Teasdale & Co., St. Louis, Mo.*

" Sirs : August 3d instant, I sent you a positive order to buy ten M. Sept. wheat, but you failed to comply with my order, therefore, I owe you nothing but good will. Had you complied with my order, it would have been better for me and none the worse for you.

"Yours, etc.

"W. B. McPike."

To which the plaintiffs replied by wire at once:

"We are holding ten thousand October wheat your account. Unless five hundred dollars is deposited for our account, by twelve o'clock, will sell and hold you for loss. Your position is preposterous.

"J. H. T. & Co."

Receiving no reply whatever to this message, the plaintiffs, on the fifteenth of August, sold the wheat on the defendant's account for the best price obtainable. There was evidence tending to show, that they were authorized to do this by the rules of trade in this market, and that the defendant was familiar with such rules.

The defendant gave evidence tending to show, inferentially, that the plaintiffs had been engaged formerly in buying grain options for him. He was permitted to state, against the objections of the plaintiffs, that he was familiar with the customs of option deals in St. Louis, and that it was always understood, in such transactions, that no grain, in point of fact, was to be delivered, but that the difference in price was to be settled in money.

The plaintiffs requested the court to charge the jury as follows:

"1. The court instructs the jury that it is admitted in this case that the defendant instructed the plaintiffs to buy for him ten thousand bushels of wheat, for September delivery, 1885, and that the plaintiffs bought for him ten thousand bushels of wheat to be delivered in the month of October, instead of the month of September, and immediately notified the defendant of that fact by a telegram, and telling him, if he still preferred September, they would change it for him. Now the court instructs the jury that it was the duty of the said W. B. McPike to have notified the plaintiffs of his dissent, in a reasonable length of time thereafter, and unless he did dissent within a reasonable time, he will be bound by the purchase, and your verdict will be for the plaintiffs; a reasonable length of time is such as a prudent business man should expect."

"2. The court instructs the jury that, although they may believe that the defendant intended the purchase in question (if he ratified it as explained in a former instruction) to be an option deal, and no grain to be delivered, still that fact does not affect the plaintiffs ; he must prove, further, that the plaintiffs, and the persons of whom they purchased the wheat, never intended, or expected to deliver the wheat."

Both these instructions were refused by the court. The court, upon the defendant's request, gave an instruction, defining the meaning of an option deal, and telling the jury that if they found, from the evidence, that this was such an option deal, to find for the defendant.

Upon its own motion the court charged the jury as to the nature of a wagering contract, and told them that if it was the intention and expectation of the plaintiffs and the defendant, that no wheat would ever be delivered to the defendant , or paid for by him, but that the transaction would be closed up by a settlement of the differences between the buying and selling, then the contract was void.

In these rulings the court erred. The plaintiffs' first instruction is subject to the objection that it assumes facts, which are controverted by the pleadings, and not admitted by the defendant's evidence, namely, that the plaintiffs did suffer a loss in this transaction. But for that fact the instruction was correct, as there was no evidence that the parties, of whom the plaintiffs purchased, never expected to deliver the wheat. The second instruction, asked by the plaintiffs, states the law correctly, and should have been given. The instruction given at the request of the defendant should have been refused ; it was misleading, and there was no evidence to support it. The second proposition contained in the instruction, given by the court of its own motion, is erroneous, because it makes the validity of the contract dependent on the intention of the plaintiffs and the de-

fendant, although the plaintiffs were not contracting principals.

It appears by the evidence that the plaintiffs were authorized by the defendant to make a valid purchase for him. They gave evidence tending to show that they made such a purchase, and had paid for the wheat. The defendant adduced no evidence whatever showing, or tending to show, that the person or persons from whom the plaintiffs bought, as his agent, did not contemplate delivery, but contemplated a mere wagering venture, to be settled by the difference in prices caused by the fluctuations of the market.

These facts bring the contract sued upon within the limits of a valid contract, according to the rule announced in *Kent v. Miltenberger* (13 Mo. App. 508), and *Cockrell v. Thompson* (85 Mo. 518).

The judgment is reversed and the cause remanded. Thompson, J., concurs; Lewis, P. J., absent.