H. V. JONES, Respondent, v. SAMUEL P. SHALE, Appellant.

St. Louis Court of Appeals, February 19, 1889.

1. **Evidence**: ENDORSEMENTS FOR TRANSFERS OF CONTRACT. In an action for breach of the defendant's contract to sell and deliver corn to the plaintiff, the defendant has no right to demand the reading in evidence of memoranda of transfers to third persons endorsed on the writing. Such transfers are original undertakings between the parties thereto, and do not affect the rights or liabilities of the defendant.

2.  **Sale :** WAGERING CONTRACT.  When either party to a sale contemplates actual delivery of the commodity sold, the contract is not wagering.  It is immaterial that the seller has not the goods at the time of the contract.  But a contract of sale, valid on its face, may be shown by evidence to have been a mere wager on the future state of the market, and, therefore, invalid.  Instructions embodying these principles were properly given.

3.  **Instructions :** FRAUD OR MISTAKE.  In the absence of any claim of fraud or mistake between the parties, an instruction that, if it was the intention of the seller to make a wagering contract, and the purchaser knew at the time of the seller's intention, then such was the understanding and agreement of both parties, was properly refused.

*Appeal from the Monroe Circuit Court.*—HON. THOMAS H. BACON, Judge.

AFFIRMED.

*W. M. Boulware,* for the appellant.

The contract having been in custody of plaintiff and being offered in evidence by him, the endorsement thereon signed by him must be considered as in evidence also.  This endorsement, notwithstanding the fact that by its terms, it purports to sell the corn to Hyatt & Burkholder, must, if it vests them with any rights, operate as a transfer of the contract by way of assignment.  A right of action for damages arising upon the breach of the contract by either party would be assignable.  But the contract itself, as long as executory on both sides and unbroken, was not the subject of assignment.  Jones could not transfer to Hyatt & Burkholder his obligation to pay ; nor could they, without the consent of Shale, be substituted as contracting parties ; neither could Jones divorce the right to receive the corn from the obligation to pay for it.  The payment of the price on the one hand and the delivery on the other are concurrent acts.  *Leahy v. Dugdale,* 27 Mo. 439.  (1) A

contract purporting to be for the future sale and delivery of grain, wherein the intent of the parties is that the transaction shall be settled by the payment on the one hand or other, as the case may be, of the difference between the contract price and the market price, is against public policy, and void.  (2) In order that this result may attach it is necessary that both parties should concur in the unlawful intent, or should both understand that such is the nature of the transaction. (3) The intent or understanding of the parties may be shown by evidence outside of the writing or terms used, and such evidence is not forbidden by the rule forbidding the varying of a writing by parol evidence.  The question concerns the intent of the parties as being lawful or against the ' public good, and on every such question the public is a party interested.  *Barnard v. Backhous*, 9 N. W. Rep. 595 ( s. c., 52 Wis. 597); *Gregory v. Wendell*, 39 Mich. 337, (s. c., 33 Am. Rep. 390 ); *Wall v. Schneider*, 59 Wis. 352 ; *Whitesides v. Hunt*, 97 Ind. 191, 49 Am. Rep. 441 ; *Sawyer v. Taggart*, Am. Law Reg. ( N. S.) 18, 229 ; *Chandler's case*, 13 Am. Law Reg. ( N. S.) 310 ; *Cobb v. Prell*, Am. Law Reg. ( N. S.) 22, 609, and note 612, *et seq.*   Instructions 4 and 5 asked by appellant ought to have been given.   The principle enunciated is sound in ethics and in law.   The evidence strongly supported the hypothesis presented. If Jones, when in a conversation with Shale concerning corn options, he proposed to buy five thousand bushels of " May corn," knew that Shale understood it to be an offer of an option deal, and permitted him to make the contract with that understanding without disclosing any other or different purpose or understanding on his part, then sound morals as well as sound law requires that he should be held to have concurred in that understanding.   Instructions number 2 and 3, given for plaintiff, are erroneous.   (1) They obscure the real issue, to-wit, the intent and understanding of the

parties back of the form of words used, and direct the attention of the jury to the question as to what the form of words used was and whether the writing correctly sets forth that form of words.   Number 2 pointedly requires defendant to prove that the writing does not correctly set out the agreement as made.   Reference to plaintiff's examination of Jones, and his cross-examination of Shale, will show the significance of this declaration.   (2) The proposition declared in both of these instructions, to the effect that to the invalidity of the contract it is necessary to show that by the agreement the corn was not under any circumstances to be delivered, but that only the difference was to be paid, is erroneous.   A contract by the terms of which the seller may either deliver or pay the difference at his option is invalid.   *Pickering v. Cease*, 79 Ill. 327 ; *Sawyer case*, Am. L. Reg. ( N. S.) 18, 229 ; *Pixley v. Boynton*, 79 Ills. 353 ; *Wolcott v. Heath*, 78 Ill. 437 ; *Gregory v. Wattomer*, 58 Ia. 711 ; *Warren v. Hewitt*, 45 Ga. 501 ; *Ruchizky v. De Haven*, 97 Penn. St. 202 ; *Sawyer v. v. Taggart*, Am. Law Reg. ( N. S.) 18, 226 ; *Cobb v. Prell*, Am. L. Reg. ( N. S.) 18, 613.

*Berry & Thompson*, for the respondent.

(1) The court did not err in refusing to compel the plaintiff to read the contracts, evidencing the sale of the corn by Jones to Hyatt & Burkholder, and by Hyatt & Burkholder to W. L. Thompson, written on the back of the contract in suit.   They constituted no part of the contract between Jones & Shale, and did not affect it in any way.   There was no assignment of the Shale contract by Jones at any time.   The contracts endorsed on back of contract in suit were read to jury by defendant and question of plaintiff's ownership was submitted in plaintiff's instructions.   (2) The testimony offered by defendant to prove a tender of the "option deal" to

Hyatt & Burkholder, was properly refused. It was immaterial and incompetent and so of the opinion of witness Cooly, as to what constituted an option contract. (3) A sale of goods to be delivered in the future is valid, notwithstanding there is an option as to the time of delivery, and the seller has not the goods, and no other means of getting them than to go into the market and buy them. *Crawford v. Spencer*, 92 Mo. 498; *Kent v. Miltenberger*, 13 Mo. App. 503; *Williams v. Tiedeman*, 6 Mo. App. 269. If either party contemplates actual delivery of the commodity, it is not a wager. *Cockrell v. Thomson*, 85 Mo. 510; *Teasdale v. McPike*, 25 Mo. App. 341; *Tomblin v. Cullen*, 28 N. W. Rep. 573 (s. c., 69 Ia. 227); *Murry v. Ochiltree*, 15 Cent. L. J. 434. Where either party to the contract intends a *bona-fide* sale or purchase the contract is not a wager, whatever may have been the secret intent of the other party. *Williams v. Tiegeman, supra; Cockrell v. Thompson, supra.* (4) The seller may have the option to deliver the property or pay the difference if he chooses to perform the contract in that way. This is simply what the law requires and compels him to do. Such a contract is not an option deal. *Jackson v. Foote*, 12 Fed. Rep. 37; *Williams v. Tiedeman, supra.* (5) The court properly refused appellant's instructions numbered 1, 5, 4, 7, 8. As to numbers 4 and 5, there was no testimony on which to predicate them. There was nothing said when the contract was made about options or differences, nothing to indicate that either party had any intent that the contract was to be a wager. Shale himself testifies that there was nothing said indicating such intent; that they talked over the terms outside the mill and then went into his desk and he wrote the contract just as they had talked it, and then signed it, and that his intent was to deliver the corn. The doctrine of these instructions is not the law. No matter what may have been Shale's secret

intention, if Jones contemplated an actual delivery of the corn, or fulfillment of contract by Shale as stipulated, there was no wager. *Williams v. Tiedeman, supra; Cummisky v. Williams*, 20 Mo. App. 606.

ROMBAUER, P. J., delivered the opinion of the court.

This is an action to recover damages alleged to have been sustained by the plaintiff, by the defendants's breach of a contract of sale. The contract sued on is embodied in the petition and is filed herewith. It is in the following words :

"CLARENCE, Mo., Aug. 12, 1881.

"I this day sell to H. V. Jones, five thousand bushels of number two mixed corn, to be delivered in Clarence, Shelby county, Missouri, on or before the last day of April, 1882, for forty-five cents per bushel. And it is further agreed by me to put it in the cars shelled, if I remain in my present mill, at a reasonable price for the shelling, and take St. Louis weights and inspection, if delivered in the cars.

"S. P. SHALE.
"H. V. JONES.

"Received on the within contract fifty dollars.

"S. P. SHALE."

The plaintiff states that he tendered performance of his part of the contract, but the defendant failed to deliver the corn as agreed to plaintiff's damage in the sum of twenty-seven hundred and fifty dollars.

The answer admits the execution of the contract, and sets up the following special defenses, which are controverted by reply.

(1) That at the time of making the contract, it was the intent and understanding of the parties thereto, that the corn therein mentioned was not to be actually delivered on the one hand and paid for by the other at

said price, but that the said contract was to be settled by the payment to the one or the other, as the case might be of the difference between said contract price and said market price. ··

(2) That by sundry assignments endorsed on the contract, and deliveries thereof, said contract at the time of bringing the suit, did not belong to plaintiff, but to the firm of Hyatt & Burkholder.

Upon the trial of the cause before a jury, there was a verdict and judgment for plaintiff in the sum of one thousand dollars, from which defendant prosecutes this appeal.

The errors assigned are the rulings of the court upon the evidence and instructions.

The contract when offered in evidence by plaintiff contained the following indorsements:

"CLARENCE, Mo., Aug. 19, 1881.

"I hereby agree to deliver the corn herein contracted to Hyatt & Burkholder, either in car shelled or in the ear in their elevator, Clarence, Missouri, at fifty-five cents per bushel, and it is further agreed that each party deposit five hundred ($500) dollars in the banking house of Holtzclaw & Gaskill, to guarantee fulfillment of contract.

"H. V. JONES,

"HYATT & BURKHOLDER."

"CLARENCE, Mo., Oct. 18, 1881.

"We hereby agree to deliver the within contracted corn to W. L. Thompson in our elevator in Clarence, said W. L. Thompson agreeing to pay us seventy cents per bushel for same, he depositing five hundred ($500) with Holtzclaw & Gaskill as security for receiving same when delivered.

"HYATT & BURKHOLDER.

"WM. L. THOMPSON."

The plaintiff read the contract, and the defendant moved the court to compel him to read the endorsements also. This the court refused to do, and also refused to declare that the endorsement, were in evidence. The defendant excepted and still excepts. There was no error in this ruling. The endorsements were, in no sense, part of the contract sued upon by plaintiff, and if authorized so to do he might have stricken them all out. 2 Greenl. Ev., sec. 166. The most that defendant could claim was that the paper having been filed as an exhibit he was at liberty to read any part thereof in evidence without further proof. This was conceded to him by the court and the endorsements were subsequently read in evidence by the defendant. We may as well add on this branch of the case that there is no substantial controversy touching the fact that either Hyatt & Burkholder or Wm. L. Thompson claim or did ever claim any right under the contract as against the defendant, nor do the endorsements admit of any such interpretation, since they are original undertakings, and do not purport to be an assignment of the contract. Hence the question whether the contract was, or was not, assignable is wholly outside of the record.

Touching the main contention, namely whether the contract was one for the sale and delivery of grain or a mere wagering contract, we say this. The following propositions are settled under the decisions in this state : Where either party contemplates actual delivery of the commodity, it is not a wager. *Cockrell v. Thompson*, 85 Mo. 510 ; *Teasdale v. McPike*, 25 Mo. App. 341. The fact is immaterial that the seller has not got the goods at the date of the contract, and has to buy them himself, or that the date of delivery is left optional with him, within specified limits of time. *Crawford v. Spencer*, 92 Mo. 498 ; *Kent v. Miltenberger*, 13 Mo. App. 503. On the other hand it is equally well settled that a written contract, though valid on its face, may, by extrinsic

evidence, be shown to have been a mere wager on the future state of the market, and as such invalid. *Kent v. Miltenberger, supra.*

The instructions given to the jury on this branch of the case, are full, fair and consistent, and in conformity with the law as above stated. Upon the defendant's request, the court expressly instructed the jury that in determining the question of wager, they should consider all the facts and circumstances surrounding the transaction, and even in instructions given on plaintiff's behalf, the court carefully avoided to give any conclusive effect to the written contract between the parties, so that the instructions as a whole presented the issues very properly to the jury.

One complaint of the court's action in charging the jury, is the refusal of instructions 4 and 5 asked by the defendant, which declare in substance, that if it was the intention of Shale to make a wagering contract, and Jones at the time of making the contract knew that such was the understanding of Shale, then such understanding of Shale was the understanding and agreement of both parties. The defendant maintains that the principle thus enunciated is sound in ethics and law, and that the instructions were supported by the facts disclosed by the evidence.

In the absence of fraud or mistake, the principle thus stated is certainly not a correct, legal principle. That neither the one nor the other is claimed in the present case must be apparent from the following statement of the facts, made by the defendant, while testifying in his own behalf :

" Q. I ask you if you and Mr. Jones talked over this contract and agreed on the terms and set down and wrote out the paper and signed it? A. Yes, sir, that was the contract.

" Q. You agreed to shell the corn in your mill? A. Yes, sir.

" Q. And you agreed to deliver it at Clarence ? A. The corn was to be delivered in the cars, and it was to be my corn until it got to St. Louis. He was to ship it. The Hannibal & St. Joe Railroad charged me twelve dollars more per car.

" Q. You never shipped options, it was corn bought in Clarence, you expected good corn to grow in that vicinity ? A. It was my impression when I made this contract.

" Q. That there would be corn ? A. It was.

" Q. You intended to buy corn to fill this contract if it was to be bought ? A. If I could buy it I would have delivered the corn in St. Louis just as agreed and he could have taken it. He could have said I didn't want the corn and then I would have stopped.

" Q. That was your intention ? A. Yes, sir.

" Q. Then if corn could have been bought at or under forty-five cents, you would have delivered the corn ? A. My intention was to deliver the corn."

There is no error in the record warranting the reversal of the judgment. All the judges concurring, it is affirmed.