## COCKRELL v. THOMPSON, *Appellant.*

**1.  Partnership**: FIRM DEBT : ACTION AGAINST FORMER PARTNER.   It is a good defence to an action by one against his former partner for the latter's share of a firm debt paid by the former that the firm creditor was, on his part, indebted to plaintiff and defendant jointly, and that plaintiff, with knowledge of the existence of such indebtedness and against defendant's consent, paid the firm creditor.

**2.**  ——— : ———.   It is, also, a good defence to such action that the firm indebtedness originated from partnership transactions between plaintiff and defendant, and at the commencement of plaintiff's action there remained unsettled of the partnership business other matters than the item of indebtedness paid by plaintiff.

**3.**  ——— : ———.   It is no defence to such action that at the time plaintiff paid the firm debt, the firm creditor was indebted to defendant individually and that plaintiff knew of such fact and, nevertheless, and against defendant's consent paid the firm debt.

**4.  Wagering Contracts, What Are.**   Where in a contract for the sale of wheat, it is the mutual understanding and intention of the parties that the transaction shall be closed by a settlement of

differences in the value of the article sold according to the fluctuations of the market and not by its delivery, such contract is one of wager and is void as being against public policy.

5. ———. Where, however, it does not appear that it was the intention of both of the contracting parties to so settle according to the fluctuations of the market, the contract will be upheld. .

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge

AFFIRMED.

*J. M. Crutchfield* for appellant.

(1) A payment, to be the foundation of a claim for contribution, must be compulsory, that is, there must be a fixed and positive obligation to pay. *Pitt v. Purssord*, 8 Mees. & W. 530; *Davis v. Humphreys*, 6 Mees. & W. 153; *Lucus v. Jeffson Ins. Co.*, 6 Cow. 635; 2 Wait's Action and Def. 289; *Frith v. Sprague*, 14 Mass. 455. (2) A broker cannot recover money advanced to pay losses incurred in a gambling operation, nor commission for his services therein. *Fareira v. Gabell*, 89 Pa. St. 89. (3) In an action to recover for losses and commission by one dealing in grain as agent for another, if it was the intention merely to settle the difference without any actual delivery, there can be no recovery. *Kolderwood v. McCree*, 11 Ill. App. 543; (4) A note given by a principal to his broker for services rendered, and money advanced in making and settling gambling grain contracts, is void. *Barnard v. Backhaus*, 52 Wis. 593 (9 N. W. Rep. 595); *Cunningham v. National Bank*, 17 Central Law Journal, 470. (5) In option deals the broker stands in no better position to recover differences than the seller. *In Re Green*, 7 Biss. 338; *Cobb v. Prell*, 15 Fed. Rep. 774. (6) Contracts to purchase or sell without the intention to deliver, but merely to settle according to the state of the market at

the maturity of the contract by paying differences, are void. *Ramsey v. Berry*, 65 Me. 570 ; *Story v. Soloman*, 71 N. Y. 520 ; *Smith v. Thomas*, 97 Pa. St. 278 ; 13 Cent. Law Journal, 35 ; *Grizelwood v. Blane*, 2 J. Scott, 11 C. B. (Eng. C. L.) 525 ; *Bruas Appeal*, 5 P. F. Smith, 299 ; *Tony v. Foot*, 95 Ill. 99 ; *Wyman v. Fisk*, 3 Ill. 238 ; *Ex parte Young*, 6 Biss. 53 ; 16 Cent. Law Journal, 225 ; *Pickering v. Cease*, 79 Ill. 328 ; *Lyon v. Culbertson*, 25 Am. Rep. 349 ; *Lyon v. Culbertson*, 83 Ill. 33 ; *Rourk v. Short*, 34 Eng. L. and Eq. 219 ; *Cassort v. Hinman*, 1 Bos. 207 ; *Biglow v. Benedict*, 70 N. Y. 70 ; *Evringham v. Meigham*, 15 Cent. Law Journal, 332 ; *Rudolf v. Winters*, 7 Nev. 125 ; *Kent v. Miltenberger*, 13 Mo. App. 508 ; *Killpatrick v. Bonsall*, 72 Pa. St. 155 ; *Yerks v. Solomon*, 18 N. Y. Sup. Ct. (11 Hun) 473 ; Article in 16 Central Law Journal, 225, and authorities there cited ; *Gregory v. Wendell*, 38 Mich. 337 ; 33 Am. Rep. 390. (7) One of two joint defendants may plead by way of set-off a demand due him from the plaintiff. *Kent v. Rogers*, 24 Mo. 306. (8) One partner cannot maintain an action at law against the other for a payment made on account of a partnership liability until after a dissolution and settlement. Story on Partnership (4 Ed.) sec. 221, p. 354 ; *Smith v. Smith*, 33 Mo. 557 ; *Moran v. Martin*, 25 Mo. 360 ; *Burns v. Nottingham*, 60 Ill. 531. (9) In an action for money paid, defendant may show that he expressly notified the plaintiff not to pay the claim, and if he pays it against such notice, he cannot recover the amount as for money paid at defendant's request or to his use. 4 Wait's Action & Defences, page 460 and 467, section 1, and cases cited ; *Barnum v. Lithauer*, 1 Abb. Ct. App. (N. Y.) 99 ; 4 Keyes, 317. (10) In an action for money paid, where there is no express request to pay it, the plaintiff must allege and prove a state of facts from which the law will imply a request and the requisite promise. 4 Wait's Action and Defences, 450 and 453 ; R. S. 1879, p. 60, sec. 3511.

*S. P. Sparks* for respondent.

(1) The petition states a cause of action. It alleges that plaintiff and defendant jointly bought and sold wheat, etc., that the transactions resulted in a loss; that it was done through their agents and that plaintiff paid the loss to the agents. (2) The answer does not charge that the transactions mentioned in it were gaming contracts. In order that a contract be illegal because a gambling one, it must be the intention of both parties that it be settled by the payment of differences. *Lehman v. Strasburger*, 3 Cent. Law Jour. 134; *Gregory v. Wendell*, 40 Mich. 432. The second instruction given for plaintiff correctly declares the law. *Buckner v. Ries*, 34 Mo. 357.

PER CURIAM.—John J. Cockrell sued Waddy Thompson for $681.25, and interest from date of demand. In his petition he charged that on October 3, 1881, he and defendant jointly purchased, in open market in Toledo, Ohio, ten thousand bushels of number two red winter wheat, to be delivered at any time during November of said year, in elevator in said city, at the price of $1.51¾ per bushel; that on October 3, 1881, they jointly sold in open market in St. Louis, Mo., ten thousand bushels of wheat of the same grade at $1.55 per bushel, to be delivered in elevators in said city any time in December, 1881; that on October 17, 1881, they jointly bought in open market in St. Louis ten thousand bushels of wheat, to be delivered in elevators in said city at any time in December, 1881, at the price of $1.52½ per bushel for five thousand bushels, and $1.52¾ per bushel for five thousand bushels; that on or about October 29, 1881, they jointly sold in open market in Toledo, ten thousand bushels of wheat, to be delivered in elevators of said city, any time in November, 1881, at $1.36¼

per bushel. That the said business was done through their factors and commission merchants, Cole Brothers, of St. Louis. That the net losses of plaintiff and defendant in said transactions amounted to $1,300.00, and the commissions of Cole Brothers amounted to $62.50. That plaintiff paid the $1362.50 *to said Cole Brothers, commission merchants,* and that defendant is liable for, and should pay plaintiff half that sum, which payment was demanded and refused, etc.

The answer denied knowledge or information, as to whether or not plaintiff paid the $1362.50. It further denied that plaintiff and defendant were indebted to Cole Brothers; alleged that Cole Brothers were liable to plaintiff and defendant in a large amount, and also liable in a large amount to defendant individually, and that plaintiff and defendant jointly, and defendant individually, had good defences to any action that Cole Brothers could have brought against them, or either of them, which plaintiff well knew, and that defendant is not liable to plaintiff. The answer further alleged that plaintiff and defendant were partners, under the firm name and style of Cockrell & Thompson, for the purpose of dealing in "options," and that they had so dealt largely, and that the business of the partnership was unsettled, and, therefore, the action ought not to be maintained.

Another defence was "that the wheat alleged in the petition to have been purchased and sold by plaintiff and defendant, was never delivered to them, or by them to any one else, but that the same was contracted for by them through said Cole Brothers, with the understanding and intention of said plaintiff and defendant, and the said Cole Brothers, that none of said wheat, and no part thereof, was ever to be delivered to, or accepted by these parties, or to be delivered by them to any one else, but that they were merely to adjust and pay the differences in the market value thereof, according to the rise and fall of the market, and that, therefore, if said Cole

Brothers had, or pretended to have, any claim or demand against the plaintiff or defendant, on account of the alleged purchase and sale of said wheat, the said claim was based upon a transaction that was contrary to public policy, and was illegal and void," and that Cockrell knew this, and that defendant had other good and valid defences against such claim, and Cockrell would not allow the use of his name in making a defence, or give the defendant the opportunity to make it, but was the attorney of Cole Brothers, in a suit defendant had brought against them in the St. Louis circuit court, etc. The reply was a general denial.

On the trial by the court, sitting as a jury, plaintiff was, against defendant's objection, permitted to amend his petition by interlineation of the words, "to said Cole Brothers, commission merchants," so as to allege a payment to Cole Brothers of the $1,300 as well as the $62.50, the petition not before showing to whom the $1,300 was paid. The evidence is not preserved in the record, but it is said that the parties introduced evidence, the plaintiff's tending to prove the allegations of the petition, and defendant's tending to prove the allegations of the answer ; and then plaintiff introduced evidence in rebuttal. Plaintiff recovered judgment and defendant appealed.

I. The defendant objected to the introduction of any evidence, on the ground that the petition stated no cause of action. The plaintiff then asked and obtained leave to amend by interlineation, as before stated. Defendant objected to the amendment, and when it was allowed over his objection, asked for a continuance, because the amendment made a material alteration in the petition, and he had no opportunity to answer and defend against the same. The court refused the continuance, and in its action in those particulars we find no error.

II.　We do not concur in defendant's conclusion that the petition states no cause of action.

III.　For plaintiff the court in effect declared that he could recover as he prayed, if he paid Cole Brothers the $1,362.50 on the transactions stated in the petition, unless Cole Brothers were indebted to plaintiff and defendant jointly and plaintiff had knowledge of such indebtedness at the time of his said payment, or, unless said indebtedness to Cole Brothers grew out of partnership transactions between plaintiff and defendant, and at the commencement of the action there remained unsettled of the partnership business other matters than the single item of the amount paid Cole Brothers. And for defendant the court declared there could be no recovery unless plaintiff and defendant were *jointly* indebted to Cole Brothers at the date of payment, and such indebtedness was then due and founded upon a legal and valid contract; nor if Cole Brothers were indebted or liable to plaintiff and defendant jointly, and plaintiff was informed of such fact and wouldn't join defendant in a suit against Cole Brothers therefor, and if plaintiff paid the claim of Cole Brothers over the objuction and against the consent of defendant. Of these declarations defendant has no reason to complain.

IV.　Defendant finds error in the refusal of a declaration of law to the effect that plaintiff could not recover if, when the payment to Cole Brothers was made, Cole Brothers were indebted to defendant, individually, in a sum equal to their demand, and plaintiff, knowing said fact, paid Cole Brothers against the consent and over the objection of defendant. This is not true as a proposition of law, and there are no special facts under which it ought to be the law of this case.

V.　If nothing of the partnership transactions of plaintiff and defendant remained unsettled at the beginning of this suit, saving only the item of payment to

Cole Brothers, upon which suit is brought, this action might be maintained, as the court properly declared.

VI. For the plaintiff the court declared, in substance, that to render the alleged purchases and sales void, as being against public policy, it is necessary that it should have been the intention of both the sellers and the buyers that no grain should be delivered or received, but that the settlements should be on "margins" or differences; and that if such was not the intention of both parties, a recovery cannot be defeated, although plaintiff and defendant, as one party to the contracts, may never have actually delivered or received any grain, but settled through their agents, by transferring their rights to other parties, or settled or rescinded the contracts by paying or receiving money as losses or gains.

The following declaration, asked by defendant, was refused: "If the court finds from the evidence that the plaintiff and defendant employed the said Cole Brothers as factors and commission merchants, to contract for the purchase and sale of the wheat mentioned in the petition, to be delivered to or by them at a future time, and that none of said wheat was ever delivered or accepted, and that neither plaintiff, defendant, nor said Cole Brothers, at the time of making any of said contracts, intended to deliver or accept said wheat, or any part thereof, but merely to pay or collect the differences in the market value thereof, according to the rise and fall of the market, and that the same was so settled, and that the alleged claim of said Cole Brothers against plaintiff and defendant grew out of a loss sustained by them on the purchase and sale of said wheat, as above stated, then plaintiff cannot recover for any part of said loss he may have paid to said Cole Brothers without the consent of the defendant."

Plaintiff's declarations rest on the proposition that to vitiate the contract, *both* parties to it must have intended that it should be in its nature a wagering contract. The

declaration asked by defendant, regards the understanding upon the one side, between the principals and the agents, and a final adjustment in accordance with such understanding, sufficient to bar a recovery in this case, no matter what contracts the agents were authorized to make or did make.

The validity of the contract is to be determined from the intention of the parties to it, whatever, or however, unobjectionable its form. If the contract be sufficient in form, and one of the contracting parties intend to pay for and receive or deliver, and be paid for the property in form contracted about, as the case may be, the contract is valid and binding, although the other party to it intend to gamble on the price of the commodity and to settle on "differences" only. And if a party, actuated by the spirit of the gambler, authorizes his agent to buy or sell an article for him as a trader, and the agent does so, at the same time knowing that his principal does not mean to receive or deliver the commodity, as the case may be, but means, when the proper time comes, to settle the business by paying losses or receiving gains, according to the fluctuations of the market, still the contract is valid and binding, unless the other party also made it as, or understood it to be, a wagering arrangement, a good contract in form, but, in fact, a mere wager upon the future state of the market. And if the agent is authorized to, and does, make a valid contract of sale or purchase for his principal, which, however, he knows the principal means to close as a mere wagering venture on the fluctuations of the market, and if by direction of the principal he afterwards does close the transaction by the payment of losses, there is no legal impediment in the way to a recovery by him of the amount so paid, with a usual and reasonable allowance for services rendered in the transaction. *Lehman v. Strassburger*, 2 Wood, 562; *Warren v. Hewitt*, 45 Ga. 508; *Kent v. Miltenberger*, 13 Mo. App. 510; *Michael*

*v. Bacon*, 49 Mo. 474; *Williamson v. Baley*, 78 Mo. 637.

The declaration asked by defendant assumes that Cockrell & Thompson authorized Cole Brothers to buy and sell wheat for them. There is no charge in the answer that Cole Brothers did not actually make for them valid contracts for the purchase and for the sale of wheat. There is no charge that any seller or buyer, who dealt with Cockrell & Thompson through Cole Brothers, did not on his part, in good faith, buy, intending to pay for and receive the wheat bought, or sell, expecting to deliver and be paid for the wheat sold. So this declaration was properly refused. And while there is not harmony in the decisions respecting the validity of contracts of sale of articles not at the time possessed or owned by the seller, to be delivered in the future, the weight of authority, and, I think, of reason as well, upholds such contracts when made in good faith and not as masks for gambling ventures. Present ownership is of less consequence than the *intention* of the contracting parties. And the law of the case is the same, whether a specific something then actually owned by one of the parties and in view is the subject of the sham sale and purchase, or whether the subject is not identified, a thing of its kind and grade merely, if the mutual understanding or intention of the parties is, that the transaction shall be closed by a settlement of differences, according to the fluctuations of the market, and that the contract shall not in good faith be one of sale and purchase, considerations of public policy render void the gambling arrangement.

So, it is equally immaterial that a specified, identified article is to be actually sold by one of the parties, or by another, at a future day, fixed or optional, or contingent, and a settlement made according to the wager, by the payment of the difference between a stipulated sum, price, or valuation, and that for which the article

shall have been sold. If, by the agreement, understanding or intention of the parties, what seems to be a contract of bargain and sale, is really only a wager of the kind under consideration, then no matter what may be the standard by which the result of the wager is to be ascertained, the vicious contract cannot be the foundation of a recovery in an action where its true character is made to appear. For a contract, whatever its form, which, by the agreement, understanding, or intention of the parties making it, is to be closed, not by the delivery and receipt in good faith of a commodity actually bought and sold, but by the payment by one party of an account equal to the increase in the value of the commodity, as ascertained by a comparison of its market price at one time, or of a fixed arbitrary valuation placed upon it, with its market value, or the price for which it may, or shall, be sold, at a different time, or place, fixed, optional, or contingent, in consideration that the other party shall pay an amount equal to the decrease in the price, value, or valuation of the commodity, whether a specified, identified thing, or unsettled, unseen, and known only as a thing of its species, or class, and grade, is void as a gambling contract. *Sawyer v. Taggart*, 14 Bush, 727.

Although we may have a suspicion that those from whom Cockrell & Thompson, through their "factors and commission merchants," "bought" grain, and those to whom, through the same agency, they "sold" grain, were like the answer says they were, dealers in "options," and the transactions those of grain gamblers, yet it is not so pleaded or proved, and we cannot *presume* the contracts to have been under the ban of the law. *Jackson v. Foote*, 12 Fed. Rep. 37; *Gregory v. Wattowa*, 58 Ia. 712; *Pixley v. Boynton*, 79 Ill. 352; *Ormes v. Dauchy*, 82 N. Y. 448.

The judgment is affirmed.