E. M. TAYLOR, Respondent, v. J. J. PENQUITE, Appellant.

Kansas City Court of Appeals, April 15, 1889.

1. **Pleading:** PETITION STATING SUFFICIENT FACTS: STATUTE of FRAUDS. The common law rule that the statute of frauds or its provisions will be deemed to have been waived, unless specially pleaded, is in force in this state and therefore a petition will not be obnoxious to the objection that it does not state facts sufficient to constitute a cause of action, because it fails to state that a contract for the future delivery of grain was in writing, especially where the claim arose out of, and in respect to, contracts and transactions already executed.

2. **Wagering Contract:** WHAT IS NOT. Though a party actuated by the spirit of a gambler authorize his agent to buy or sell an article for him as a trader and the agent does so, at the same time know-that his principal does not mean to receive or deliver the commodity as the case may be, but means when the proper time comes to settle the business by paying losses or receiving gains according to the fluctuations of the market, still the contract is valid and binding, unless the other party also made it as, or understood it to be a wagering arrangement, a good contract in form but a mere wager upon the future state of the market; and if the agent afterwards by direction of his principal closes the transaction by the payment of the losses, there is no legal impediment in the way of recovery by him of the amount so paid with the usual and reasonable allowance for services rendered in the transaction.

3. **Pleading:** PETITION INDEFINITE BUT SUFFICIENT AFTER VERDICT. While the petition in this case might have been made more specific in its allegations, but as no demurrer, other than it did not state facts sufficient to constitute a cause of action, was interposed thereto, the objection on account of defective statement of the several matters, suggested by defendant, is not available after verdict.

4. **Demurrer to Evidence:** OVERRULING OF: WHEN REVIEWABLE. Where defendant interposes a demurrer to plaintiff's evidence, and, upon its being overruled, introduces evidence in his own behalf, and the evidence as a whole entitled plaintiff to go to the jury, this court cannot review such ruling of the trial court.

Taylor v. Penquite.

5.  Practice: EVIDENCE OF AGENCY AND OF ACTS OF AGENT.  While
    in this case there appears to have been sufficient evidence of
    plaintiff's agency to permit him to show the extent of his trans-
    action as such agent, yet if it was error to permit him so to
    testify, such error was subsequently cured by the testimony of
    defendant.

6.  Evidence: WITNESS TO STATE FACTS, NOT OPINIONS.  Witnesses
    should state facts, not opinions, unless experts, and in this case,
    while it was not proper for the witnesses to state the intention of
    the parties, yet in view of the whole evidence and especially of
    the defendant's introduction of like evidence, such fault is not
    regarded prejudicial or reversible error in this case.

7.  Practice: VARIANCE, WHEN NOT REVIEWABLE.  Defendant's
    complaint of a variance between the allegations of the petition and
    the proof, while it is thought to be a misconception of the evidence
    cannot be reviewed here, because of failure to comply with the
    statute in preserving an exception thereto, Revised Statutes, sec-
    tion 3565.

8.  Instructions: AS TO WAGERING CONTRACT.  Instructions set out
    in the opinion examined and approved.

9.  Appellate Practice: INSTRUCTION DECLARING THERE IS NO
    EVIDENCE TO PROVE A CERTAIN ALLEGATION.  Defendant's instruc-
    tion to the effect that there was no evidence of a contract of agency
    asserts no principle of law but raised a question of fact which the
    court passed upon, and it is therefore conclusive and incontrovert-
    ible in an appellate court.

10. ———— : FINDING OF TRIAL CONCLUDES APPELLATE COURT.  While
    there may be suspicion that the transactions of this case are
    *contra bonos mores* such cannot be deduced from the record as a
    legal inference, and as the trial court, on correct rules of law, has
    found these transactions lawful, this court must accept such find-
    ing as conclusive.

*Appeal from Pettis Circuit Court.*—HON. RICHARD
FIELD, Judge.

AFFIRMED.

*Sangree & Lamm*, for appellant.

(1) The court erred in overruling defendant's objec-
tion to the introduction of any testimony.  The petition

does not state facts sufficient to constitute a cause of action. The court also should have sustained the motion in arrest for that reason. The wheat sold in June and the wheat bought in July, at a sum aggregating $7,906.25, was not paid for in whole, or part, and was not to be delivered until in the future. Written contracts, were, therefore, necessary to make these contracts valid ( R. S., sec. 2514 ), and had to be proved and, if proved, plead. *Scott v. Robards*, 67 Mo. 289 ; *Pier v. Heinrichoffen*, 52 Mo. 333 ; *Cook v. Putnam County*, 70 Mo. 668 ; *McConey v. Wallace*, 22 Mo. App. 377 ; *Galway v. Shields*, 66 Mo. 313. The terms of the contract of agency should have been set forth, and not mere legal conclusions. *Moore v. Mountcastle*, 72 Mo. 605 ; *Langford v. Sanger*, 40 Mo. 160 ; *Boogher v. Ins. Co.*, 8 Mo. App. 533. As to the commissions sued for ( $6.25 ) the petition declares neither upon a contract nor upon a *quantum meruit*. *Eyerman v. Cem. Ass'n*, 61 Mo. 489 ; *Davis v. Brown*, 67 Mo. 313. It is not alleged in the petition to whom the money plaintiff seeks to recover was paid. *Cockrell v. Thompson*, 85 Mo. 510. In the last cited case, the petition was amended in this very particular, and then held good. The petition in this case, on its face, shows that the transactions were "option deals." (2) It was error for the court to allow the evidence of plaintiff, and of the witnesses, Anderson and Gholson, as to their understanding of these contracts, and their beliefs, conclusions and inferences therefrom. *Kent v. Miltenberger*, 15 Mo. App. 480 ; *Muff v. Railroad*, 22 Mo. App. 584. (3) Plaintiff must recover, if at all, on the cause of action stated in his petition. He alleges that he was defendant's agent, and that he bought and sold wheat, and paid out money as such agent. The proof is, that he bought and sold for himself, as principal contractor, and paid out the money sued for on his own contracts. *Field v. Railroad*, 76 Mo. 614 ; *Stix v. Matthews*, 75

Mo. 96; *Newham v. Kenton*, 79 Mo. 382; *Clements v. Yeates*, 69 Mo. 623; *Beck v. Ferara*, 19 Mo. 30; *Kemp v. Foster*, 22 Mo. App. 643; *Phleger v. Welner*, 21 Mo. App. 580; *Day v. Holmes*, 103 Mass. 306. (4) We complain of the error of the court in not sustaining the demurrer to the evidence, at the close of plaintiff's case. The court erred in refusing defendant's instruction number 2, and in not granting a new trial. The evidence of defendant to the effect that he ordered his "deal closed" does not help plaintiff's case. What does "closing a deal" mean? The courts will not take judicial notice of the meaning of such slang. There is no proof of its meaning. *McNickal v. Exp. Co.*, 12 Mo. App. 401; *State v. Bruner*, 17 Mo. App. 274; *State v. Russell*, 17 Mo. App. 16; *McGoven v. Railroad*, 61 Mo. 528; *Brown v. Railroad*, 67 Mo. 122; *Heideman v. Wolfsten*, 12 Mo. App. 366; *Bank v. Fricke*, 75 Mo. 178. The finding and judgment were against the law and the evidence and not supported by the evidence. There was no proof of agency, no evidence of plaintiff's authority to pay out the money sued for, or incur any liability, no evidence to whom said money was paid, nor that it was rightfully paid. *Murdock v. Brown*, 16 Mo. App. 549; *Hunt v. Railroad*, 89 Mo. 607.

*H. T. Williams*, for respondent.

(1) A factor or broker is entitled to recover from his principal for commissions and for losses by him paid out on valid contracts of purchase—for future delivery. *Teasdale v. McPike*, 25 Mo. App. 341. (2) To render invalid, as between factor and principal, a contract for the sale or purchase of grain for future delivery, it must be shown that the principal, the factor, and the party or parties, with whom the factor dealt for the principal, did at the time contemplate and understand that there should be no actual delivery. And the burden of proof is on him who alleges that the

transaction is illegal, *i. e.*, in this case on defendant Penquite. *Teasdale v. McPike*, 23 Mo. App. 341 at p. 346. (3) The validity of a contract of sale of any commodity for future delivery depends upon the mutual understanding and intention of the parties thereto at the time of making said contract, and, if entered into in good faith by either, it is valid and binding as against the party intending to gamble. *Cockrell v. Thompson*, 85 Mo. 510, at p. 518; *Teasdale v. McPike*, 25 Mo. App. 341; *Crawford v. Spencer*, 92 Mo. 498, top of p. 506; *Kent v. Miltenberger*, 13 Mo. App. 503. In the latter case at p. 507. The only evidence in the case of gambling intent is found in defendant's direct examination where he states only his suppositions and these he contradicts on his cross-examination where he says he did not intend to gamble. (4) The plaintiff's petition states a good cause of action, *i. e.*, that plaintiff was a broker, or commission merchant, was authorized by defendant to sell and buy wheat for him for future delivery, and that according to instructions from defendant, he did so; that plaintiff was to receive a reasonable compensation for services. (5) Plaintiff's declarations of law are correct. See cases above cited.

SMITH, P. J.—This was an action brought by the plaintiff against the defendant in the circuit court of Pettis county by which the plaintiff sought to recover the sum of three hundred dollars and fifty cents.

The petition alleged that the plaintiff was a resident of the city of St. Louis in this state and that he carries on and conducts the business of grain commission merchant.

And for his cause of action, the plaintiff states that on the twenty-ninth day of June, 1886, he, acting as the agent of J. J. Penquite, the defendant, and in accordance with the instructions, and by the authority conferred on him by defendant, and for account and risk of

defendant, did sell in open market in the city of St. Louis, Missouri, five thousand bushels of wheat, known and graded in the market as number 2 wheat, at seventy-four and seven-eighths cents per bushel, amounting to the sum of $3,743.75. Said wheat, according to the terms of said sale, to be delivered to the purchaser by the defendant *at his option* during the month of August, 1886. That plaintiff made said sale for defendant in good faith and with the understanding and intention that the wheat so sold by him, for defendant, would actually be delivered to the purchaser by the defendant during the time agreed upon for said delivery.

That on the seventh day of July, 1886, the plaintiff, acting as the agent of defendant, and according to instructions, and for account of, and at the risk of defendant, did buy in open market, in the city of St. Louis, Missouri, five thousand bushels of wheat, known and graded in the market, as number 2 wheat at eighty-three and one-fourth cents per bushel, amounting to $4,162.50, said wheat according to the terms of said purchaser to be delivered to the defendant, at the *seller's option*, during the month of August, 1886. That said purchase was made by plaintiff, for the defendant, in good faith, and with the understanding and intention that the wheat so purchased should actually be delivered by seller to the defendant during the time agreed upon for said delivery.

That for said services in selling in June 29, 1886, and buying July 7, 1886, so rendered by plaintiff, for defendant, the defendant became justly indebted to plaintiff in the sum of $6.25 for his commissions.

That the amount of said purchase, to-wit: $4,162.50, made on July 7, 1886, by plaintiff, for defendant, exceeded the amount of said sale, to-wit: $3,743.75, made on the twenty-ninth day of June, 1886, by plaintiff, for defendant, by the sum of $418.75, which sum of $418.75 was paid out by plaintiff, for the defendant at

the defendant's instance and on his account. That said $6.25 for commissions, and said $418.75, so paid out by plaintiff, for defendant, amounted to four hundred and twenty-five dollars, for which sum of four hundred and twenty-five dollars, the defendant became justly indebted to the plaintiff. Plaintiff further states that defendant has paid him in part payment of said four hundred and twenty-five dollars, the sum of $124.50 leaving a balance of $300.50, unpaid and due from defendant to plaintiff, and plaintiff states that he has repeatedly requested and demanded payment of said $300.50 from defendant, and, that although the defendant has many times, both in person to plaintiff and by letters, promised to pay the same, he has not done so, and that said sum of $300.50 is still due, owing and unpaid to plaintiff.

The answer admitted the difference in the amounts, alleged to have been received and paid for wheat, was the sum of $418.75 and that the defendant had paid plaintiff $124.50 which was "purely voluntary" and denied every other allegation of the petition. It further set forth some other matters, which need not be stated here, and then alleged that said sale and purchase were only shams and that the mutual understanding and intention of plaintiff and defendant and plaintiff and said unknown vendee and vendor, at the time, was that the said transactions were to be closed by the settlement of differences, according to the fluctuations of the market, and that none of said pretended contracts of sale and purchase were made in good faith with the intention and understanding that the actual grain should be delivered, but on the contrary, it was well understood by all parties that no grain was to be delivered, but that a settlement should be made as aforesaid and that said alleged contracts were mere wagering contracts as to the future value of grain at the said pretended time of the delivery, that the said money so alleged to have been

paid out by plaintiff was not paid out, if at all, in the settlement of said difference, with the knowledge or consent of defendant, but only to carry out and further said illegal and gambling undertaking. That the commissions sued for arose out of said void and immoral transactions, as well as said pretended payment.

At the trial which was by the court, a jury having been dispensed with, the defendant objected to the introduction of any evidence for the reason that the petition did not state facts sufficient to constitute a cause of action. The evidence disclosed about this state of facts : That the plaintiff was a grain dealer and commission merchant in the city of St. Louis, engaged in the business of buying and selling grain, and that the defendant had for several years dealt in grain at La Monte, Missouri; that on June 29, 1886 the plaintiff at the request of defendant sold for him five thousand bushels of wheat at seventy-four and seven-eighths cents per bushel, to be delivered in the month of August to W. T. Anderson & Co., of St. Louis; that afterwards on July 7, 1886 the plaintiff at the request of defendant bought for him five thousand bushels of wheat from Gholson, Farley & Co. at eighty-three and one-fourth cents per bushel to close and settle up said contract theretofore made with W. T. Anderson & Co.; that the plaintiff in making these two transactions of purchase and sale of wheat incurred a loss of $418.75 which he paid out for defendant.

There was evidence tending to show that the plaintiff by letter kept the defendant freely advised of the facts and circumstances connected with the transactions just mentioned.

The evidence nowhere showed that the parties to said contracts of sale and purchase did not intend to deliver the subject-matter of the same, nor that said contracts were not made in good faith. The defendant himself testified that he "ordered" the plaintiff to sell

and buy the wheat at the times and in the quantities stated in the plaintiff's petition, and that while he had no intention of delivering or receiving the wheat that he did not intend to gamble. He further testified that he had paid plaintiff one hundred and fifty dollars on what he claimed.

The letters in evidence showed pretty clearly that the plaintiff made the sale and purchase of the wheat under the direction of the defendant.

There was no evidence of an agreement contemporaneous with the contracts of purchase and sale that they were severally to be discharged, not by actual delivery of the wheat but by the payment of differences. While it is true that the defendant testified that it was his understanding that no wheat was to be delivered under the contracts, and that he thought that such was the understanding of the other parties, the concurrent testimony of all the other parties to the contracts contradict the defendant and state that the contracts were made in good faith with no understanding of the kind stated by defendant. It seems that defendant was not present at any of these grain transactions, the same being had with persons, as he states in his answer, "to him unknown." We have stated quite enough of the evidence to subserve our present purpose.

The court, at the instance of the plaintiff, declared the law of the case to be as follows :

(1) On the part of plaintiff the court declares the law to be that a mere intent or purpose of the defendant not to receive or deliver any wheat in the transactions mentioned in the evidence, but to settle by differences only, does not make the transactions, alleged in the petition, bets or wagers on the price of wheat, but that to make said transactions, bets or wagers on the price of wheat, there must have been a mutual understanding between both the buyer and the seller, in said transactions, that no wheat was to be delivered, and that there was to be a settlement by differences only.

(2)   The court declares the law to be, that a party may contract to sell wheat at a price agreed upon, though he may own none at the time of the contract, to be delivered to the purchaser during a future month agreed upon at the time of the contract, upon any day of said month that the seller may choose, if the buyer and seller so agree, and that such transactions are not objectionable on the grounds of betting, gambling or wagering, unless it is also contracted and agreed between the buyer and seller, at the time of making said contract of sale, that there shall be no delivery of wheat, but a mere settlement of differences between the parties according to the fluctuations in the market price of wheat.

(3)   The court declares the law to be, that although the defendant may have intended to gamble in the price of wheat, yet to render the contract of sale, as alleged in the petition, void, it must be proved by the evidence in the case that the purchaser, with whom the plaintiff contracted the sale for defendant, also intended to gamble on the price of wheat, and that plaintiff at the making of said contract had knowledge of said gambling intent of the parties thereto.

The defendant asked four instructions, the first, third and fourth of which were given and the second being refused and which was as follows:

(2)   The court, sitting as a jury, declares that there is no evidence in this case of any contract of agency, giving plaintiff power to buy for defendant five thousand bushels of wheat, at the price alleged, or to pay, to any unknown person, the sum of money alleged in the petition.

The finding and judgment of the court was for the plaintiff.   After unsuccessful motions for a new trial and in arrest of the judgment, the defendant prosecuted his appeal here.

I.  The first ground of defendant's appeal is that the petition does not state facts sufficient to constitute a cause of action in that the wheat sold and bought was not to be delivered until in the future and that the contracts therefor to have been binding on the parties ought to have in writing.  We take it that this objection really is that said contracts stated in the petition do not satisfy the statute of frauds.

It is true that the requirements of the code is that facts constituting the cause of action must be stated and it may be difficult to see why the statute of frauds is a new matter of defense and why the general denial does not sufficiently raise the question. since the plaintiff in proving his contract must show it to be one not enforceable at law.  The common law rule that one, who would avail himself of the statute of frauds, must especially insist upon it in pleading or be deemed to have waived the benefit of its provisions, is in force in this state.  *Donaldson et al. v. Newman,* 6 Mo. App. 235; *Sherwood et al. v. Saxton,* 63 Mo. 78; *Gardner v. Armstrong,* 31 Mo. 535.

There being no such defense especially interposed by defendant's answer. the only question is whether the contracts set up in the petition are good at common law.  The fact, that a party to a contract does not have on hand the commodity which he undertakes to sell for future delivery, at the time he makes the sale, and that he does not expect to have it on hand until the time arrives for delivery, but that he expects then to go upon the market and purchase it for delivery under his contract, does not render such contract invalid.  And what he may do by himself in this respect, he may do by an agent.  He may employ a broker to make the contract for him and to execute it for him in any manner which it would be lawful for him to make it and execute it if acting for himself in person.  He may lawfully employ a broker on exchange to sell wheat for him for delivery

at a future time and to execute the contract for him, by purchasing upon the market wheat for the delivery when the time arrives for its delivery, or settling with the purchaser by the payment of the difference between the contract price and the market price, if the purchaser shall waive the execution of the contract by the delivery of the wheat according to its terms. *Kent v. Miltenberger*, 13 Mo. App. 503; *Williams v. Teidman*, 6 Mo. App. 269; *Teasdale v. McPike*, 25 Mo. App. 341; *Crawford v. Spencer*, 92 Mo. 498; *Cockrell v. Thompson*, 85 Mo. 510. In *Cockrell v. Thompson*, *supra*, it is said by the supreme court of this state that "if a party actuated by the spirit of a gambler authorize his agent to buy or sell an article for him as a trader and the agent does so, at the same time knowing his principal does not mean to receive or deliver the commodity, as the case may be, but means when the proper time comes to settle the business by paying losses or receiving gains according to the fluctuations of the market, still the contract is valid and binding unless the other party also made it as, or understood it to be, a wagering arrangement, a good contract in form but a mere wager upon the future state of the market. And if the agent is authorized to, and does, make a valid contract of sale or purchase for his principal, which, however, he knows the principal means to close as a mere wagering venture on the fluctuations of the market, and by direction of the principal, he afterwards does close the transaction by the payment of losses, there is no legal impediment in the way of recovery by him of the amount so paid with a usual and reasonable allowance for services rendered in the transaction." By the application of these principles to the plaintiff's petition it is plain to be seen that it is sufficient.

Again the petition alleges that the plaintiff's said claim arose out of, and in respect to, contracts and transactions already executed, and which we have shown are

valid in so far as alleged in the petition, and hence it is quite difficult to see how the statute of frauds can be made applicable thereto.

The petition possibly might have been more specific in its allegations, but as no demurrer, other than that it did not state facts sufficient to constitute a cause of action, was interposed thereto, the objection on account of defective statement of the several matters, suggested by defendant in his brief, is not available after verdict. The statute provides that when a verdict has been rendered in any cause the judgment thereon shall not be reversed for want of any allegation or averment, on account of which omission, a demurrer could have been maintained, nor for omitting any allegation or averment without the proving of which the triers of the issue might not have given such verdict. Revised Statutes, section 3582. The case upon the petition, it seems to us, to be simply this : That the plaintiff, acting as defendant's agent, made for him certain lawful contracts, and executed and discharged them in a lawful manner, and by so doing the defendant incurred an indebtedness to the plaintiff which he seeks to enforce by an action at law. The petition we think is not obnoxious to the objections which the defendant has lodged against it.

II. We cannot review the ruling of the trial court upon the defendant's demurrer to the plaintiff's evidence, for the reason that he introduced evidence in his own behalf and the evidence as a whole entitled the plaintiff to go to the court sitting as a jury. *Bowen v. Railroad*, 95 Mo. 268.

III. It is not believed that the court committed error, or if so, that the same was prejudicial to the rights of defendant in permitting the plaintiff to state in his testimony the facts and circumstances upon which his claims against defendant were based, since the defendant's own testimony, with the letters in evidence,

were sufficient to establish the plaintiff's agency. There was a sufficiency of evidence tending to establish the agency to permit the plaintiff to show the extent of his transactions as such agent of defendant. If the objection, that the plaintiff was permitted to testify "what he did," as agent for defendant, without first proving his agency was valid, it was subsequently rendered invalid and the objectionable testimony made admissible by the testimony of defendant and the introduction of the written correspondence, which has already been remarked, very clearly established the plaintiff's agency.

IV. The defendant's third point, in relation to the statute of frauds, is disposed of by what has been said in the first paragraph of this opinion.

V. The general rule is that witnesses must state facts and not opinions, except in those cases where experts are allowed to state opinions. The witnesses testified that it was the understanding that the wheat sold and purchased was to be delivered.

This must be construed to mean that the contracting parties agreed that the wheat was to be delivered. And while it was not proper for the witness to state what the intention of the parties was, still in view of the whole evidence and especially of the fact that defendant introduced like evidence, we do not think that this was prejudicial to the defendant, or that the ruling of the court in respect thereto constitutes reversible error in this case.

The defendant's fourth point is ruled against him.

VI. The defendant further contends that there is a variance between the allegation in the petition and the proof in that the petition alleges that the wheat was purchased and sold by the plaintiff as agent, while the proof was that he purchased and sold for himself.

This, we think, is a misconception of the evidence, but, however this may be, the objection is not available

for the reason that the only method for preserving an exception, where there is a material variance between the allegations in the petition and the proof, is pointed out by the statute and that has not been followed by the defendant, and hence we cannot review that matter here. R. S., sec. 3565; *Cayuga Bank v. Dunklin*, 29 Mo. App. 441.

VII. The plaintiff's instructions, we think, in the light of the adjudged cases, which we have cited, already embodied correct principles of law as applicable to the case. It is deemed unnecessary to enter into an extended discussion of the doctrine of these instructions.

It is believed that the plaintiff's instructions are in consonance with the law as it has been repeatedly declared by the appellate courts of this state, and for that reason we content ourselves by a reference to these cases.

VIII. The court properly refused the defendant's second instruction. There was at least some evidence of a contract of agency between the plaintiff and defendant. And at any rate this was a question of fact passed upon by the court and it is, therefore, conclusive and incontrovertible here. This court has only the power to review the law declared by the circuit court, and as that court was invested with both facts and law, we must assume the facts to be as that court found them. *Gaines v. Fender*, 82 Mo. 509; *Hamilton v. Boggess*, 63 Mo. 233. Besides the defendant's refused instruction asserts no principle of law, but simply requests the court to declare that there was no evidence of the existence of an alleged fact.

IX. While there is a lurking suspicion in our own mind that the transactions between plaintiff, defendant and the other parties to the same, are *contra bonos mores*, still there seems not enough in the record to

deduce this as legal inference, and as the trial court, sitting as a jury, heard the evidence and no doubt fully considered the whole case under correct rules of law and found these transactions were lawful, we must accept that finding as conclusive upon us. With the concurrence of the other judges, the judgment of the circuit court is affirmed.