CONNOR *et al., Appellants,* v. BLACK, *Appellant.*

Division Two, December 23, 1893.

1. **Option Contracts:** BROKERS: COMPENSATION. Where brokers are directed by their principals for whom they have sold grain for future delivery, to close out the transaction by the purchase of the same quantity of grain as they have sold, they are not entitled to credit for the purchase of a part of such amount made without the consent of their principal from a member of their firm and under a fictitious name.

2. **Practice:** EVIDENCE: OBJECTIONS. Where evidence offered is admissible for any purpose, mere general objections thereto are insufficient.

3. ———: ———: ———. Where, however, the evidence is inadmissible on any ground, a general objection on the ground of incompetency, immateriality or irrelevancy is sufficient.

4. **Option Dealing:** STATUTE. The act of the legislature of March 19, 1887 (Acts p. 171, as amended in section 3835 of Revised Statutes of 1889), to prevent gambling under the guise of trading in stocks etc., and defining bucket shops was directed at keepers of bucket shops and to individuals or companies engaged in dealing in futures and gambling in grain and other articles of commerce and was not designed to affect transactions between commission merchants, their customers and patrons.

Connor v. Black.

5. ——: ——. Under Revised Statutes, section 3931, prohibiting and punishing option dealing, the transaction is illegal where the seller does not intend to deliver the property sold, but simply to settle the difference in price, whether his brokers and the purchaser knew of his intention or not.

6. ——: ——: BROKER. The broker cannot, in such case, recover from the seller, commissions for conducting the business or money paid to settle losses on the transaction.

*Appeal from Clark Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED AND REMANDED.

*R. D. Cramer* and *Edward Higbee* for Connor Brothers, appellants.

The court erred in giving defendant's instruction number 5. *Cameron v. Durkheim*, 55 N. Y. 425, 436 to 439, "Black Friday" case; *Howard v. Smith*, 56 Mo. 314; *Cockrell v. Thompson*, 85 Mo. 510; *Taylor v. Penquite*, 35 Mo. App. 389; *Kent v. Miltenberger*, 13 Mo. App. 503. (2) The ruling of the court is anomalous. P. P. Connor had bought this 40,000 bushels of oats with his own money, at thirty-seven cents. It was his private property: he did not hold it in trust for respondent even at that price. As well charge plaintiffs with all losses as the losses on this 40,000 bushels. If the plaintiffs had really bought the 100,000 bushels for themselves while pretending to act as respondent's brokers, then the whole loss should fall on them. If, as an independent transaction, respondent had instructed plaintiffs to buy 40,000 bushels of grain for him, and they had sold him their own grain, he could restore the grain and repudiate the transaction. *Brookman v. Rothschilds*, H. L. 5 Bligh. (N. S.) 165, cited in Dos Passos on Stockbrokers, foot of page 224. (3) The court erred in overruling plain-

tiffs' motion for a new trial. (4) The judgment should be reversed and judgment entered in this court for the amount claimed by plaintiffs with interest.

*McKee & Jayne* and *John D. Smoot* for George Black, appellant.

(1) The petition does not state facts sufficient to constitute a cause of action, and this is fatal on appeal. *Furnishing Co. v. Wallace*, 21 Mo. App. 128; *Honovun v. Pottery Co.*, 9 Mo. App. 595; Section 2039, R. S. 1889. (2) The court erred in admitting in evidence the copies of the deeds of trust in favor of John B. Mudd, trustee, and also the chattel mortgage from George Black to Clay Black. (3) The court erred in giving instructions numbers 2, 5, 6 and 7, offered by respondent, for it was proven that appellant had no oats on hand to deliver at the time he arranged with respondents to sell for him; and knowledge of purchaser that no oats was to be delivered, was not required. Laws, 1887, p. 172; Laws of 1889, p. 98; R. S. 1889, secs. 3834, 3835, 3836, 3837, 3739, 3931, 3932, 3933, 3934, 3936; *Crawford v. Spencer*, 92 Mo. 498; Law of the Produce Exchange, secs. 189, 190, 199, 206, 210. (4) The court erred in refusing instruction number 10 offered by appellant, for if respondents and appellant did not intend any oats was to be delivered on the contract of sale, it was a gambling contract on their part, and if money was paid thereon, by appellant, to respondents, within three months next before the beginning of this suit, appellant was entitled to recover it back. *McGrew v. City*, 4 S. W. Rep. 38; *Floyd v. Patterson*, 10 S. W. Rep. 526; R. S. 1889, sec. 5209; *Crawford v. Spencer*, 92 Mo. 498; *Crockrell v. Thompson*, 85 Mo. 510; *Irwin v. Williar*, 110 U. S. 499; R. S. 1889, secs. 3931, 3932, 3933, 3934,

3936, 3834, 3835, 3836, 3837, 3839; Acts of 1889, p. 98; Acts of 1887, p. 172; *Jones v. Shale*, 34 Mo. App. 302; *Taylor v. Penquite*, 35 Mo. App. 389. (5) The verdict of the jury was against the evidence, and should have been set aside, for respondents acted as the agent of both buyer and seller, in sale and purchase of oats. 2 Pomeroy's Equity, sec. 950; *Chapman v. Currie*, 51 Mo. App. 40; Dos Passos on Stock Brokers, pp. 213, 215, 280. (6) The court erred in refusing to sustain appellants motion for a new trial; and, also, his motion in arrest of judgment, for therein the court's attention was called to all the foregoing points relied on and errors complained of.

BURGESS, J.—While there have been two transcripts of the record filed in this case, there is in fact but one case wherein George Black appeals from the judgment against him in favor of plaintiffs, and the plaintiffs appealed from the same judgment and also the judgment against them in favor of Clay Black. The cases, for convenience, will be considered together.

On the seventeenth day of July, 1890, and for several years previous thereto, plaintiffs were partners doing business as brokers and commission merchants in the city of St. Louis, buying and selling grain and hay on commission, and were members of the merchants' exchange in said city. That on said day they, as brokers, sold for, and on account of, defendants and at their request, one hundred thousand bushels number 2 mixed oats at thirty cents per bushel to the following responsible purchasers, to wit: Linebarger & Co., five thousand bushels; J. W. Warren & Co., five thousand bushels; Schseiner, Flack & Co., ninety thousand bushels; all to be delivered in regular elevators in the city of St. Louis on any day in the

month of September, 1890, at the option of the defendants.

The petition alleges and the proof tends to show that said oats were sold under the custom of brokers and rule of the said merchants' exchange; that it is, and then was, the custom of brokers in said city, and in accordance with the rules of the said merchants' exchange for the brokers to sell the goods in their own name, without disclosing the name of their principal, and if the principal failed to deliver the goods according to the contract, then the brokers are liable to the purchasers and compelled to deliver the goods sold during the optional time, or upon waiver of actual delivery to pay the difference between the market and contract price; and that this may be done the brokers are authorized by said rules and custom to purchase like goods at the market price for account of their principal, and make delivery thereof, or to settle as aforesaid, and charge the same so paid out in settlement, to the principal; that, under the custom and rules and the understanding of the parties, it was a part of the contract between plaintiffs and defendants that upon these sales so made by plaintiffs for defendants, the defendants were to keep a margin of cash in plaintiffs hands for their protection in case of a rise in the market of the grain sold, from and after the date of said sales until the end of the optional time for the delivery thereof, above the price at which it was sold, and if the market price should be above the price at which it was sold, then upon notice thereof and demand of sufficient margin from defendants, if they failed forthwith to put up the margin sufficient to protect plaintiffs, then plaintiffs were no longer bound to carry said contracts, but might at their pleasure close out the contracts by buying and delivering, during the said optional time, at the market prices, the oats which

defendants had sold and not delivered, or settle with the vendees in cash at such price, and the difference in price was to be charged to defendants.

That said customs and rules were well-known to and assented to by defendants at the time of said sales and formed part of the contract between plaintiffs and defendants, and said oats were sold under said customs and rules for defendant's account; that shortly after said sale the market price of said oats rose and continued to steadily advance from day to day; that in accordance with said rules and customs, at plaintiffs' demand, defendants put up in plaintiffs' hands, margins on said sales as follows:   July 19, 1890, cash, $1,000; July 28, 1890, cash, $2,000; July 29, 1890, cash, $2,000.

That on or after July 31, 1890, the market price of said oats rose so high as to absorb all of said margins, and plaintiffs so notified defendants and demanded further margins; that the price continued to advance on each subsequent day and defendants repeatedly promised plaintiffs to pay sufficient margins, but failed to put up any more than as above stated. That on August 6, 1890, the market price of oats had so advanced that if defendants were then to buy to fill their said contracts there would be a heavy loss on the transaction.

That defendants then refused to put up any further margins and directed plaintiffs to close out said transaction and to buy one hundred thousand bushels of such oats on the St. Louis market for delivery in September, 1890, and fill their said contracts. That plaintiffs accordingly bought number 2 mixed oats at the prices following on the open market at regular market prices, to wit:

Fifteen thousand bushels at thirty-nine cents per bushel, $5,850; ten thousand bushels at thirty-nine and one-fourth cents per bushel, $3,925; seventy-five thousand bushels at thirty-nine and one-half cents per

bushel, $29,625.

That said purchases were made with the knowledge, direction and consent of defendants, and plaintiffs delivered said oats in fulfillment of said contracts of sale, and in so doing necessarily paid out and advanced for account of defendants in excess of $5,000 margins, so put up in plaintiffs' hands as aforesaid, the further sum of $4,400 and earned their customary brokerage, justly chargeable against defendants, the further sum of $125.

Plaintiffs prayed judgment for $4,400 and brokerage to the amount of $125 with the interest.

Clay Black's answer was a general denial. George Black, in his answer, admitted that plaintiffs were copartners, doing business as commission merchants, and were members of the merchants' exchange, and that he instructed them to sell one hundred thousand bushels number 2 mixed oats at call in the chamber of commerce under the rules of said exchange at thirty cents per bushel, but denied all other allegations in plaintiffs' petition.

The answer also avers, that defendant on July, 1890, instructed plaintiffs to sell one hundred thousand bushels number 2 mixed oats as aforesaid; that afterward plaintiffs notified defendant that they had sold same, and on plaintiffs' demand defendants remitted to them the margin, as stated in plaintiffs' petition, amounting to $5,000; that plaintiffs' statements that they had sold the one hundred thousand bushels oats were false and fraudulent; that the demands for margins were false and fraudulent and made for the purpose of cheating and defrauding defendant, and prays judgment for the recovery of the $5,000 so put up as margins with interest after July 29, 1890. Avers that the transactions pleaded in the petition were wagering and gambling transactions, known in

the commercial world as "deals in options;" plaintiffs only pretended to sell for defendants one hundred thousand bushels of oats for future delivery, when neither plaintiff nor defendant expected or intended defendant would deliver any oats, and none were delivered thereunder, but plaintiffs and defendants mutually expected and intended a settlement by the payment of differences, and plaintiffs' claim consists wholly of balances claimed to be due on pretended statement of aforesaid wagers and deals and were void and illegal. That defendants put up forfeitures termed margins, in the aggregate, $5,000, as before stated, on said gambling contract, and prays judgment for said $5,000, with interest from July 29, 1890.

Plaintiff's reply denies allegations of new matter and pleads the statutes of limitation to defendant's counterclaim.

The trial, which was before a jury, resulted in a verdict in favor of plaintiff against George Black in the sum of $737.51 against him on the counterclaim and in favor of the defendant, Clay Black. The plaintiffs and George Black then perfected their respective appeals to this court.

The court, at the instance of defendant, among others, gave the following instruction:

"The evidence on behalf of the plaintiffs shows that the plaintiffs closed out the transaction as to forty thousand bushels of oats, purchasing that amount of grain of P. P. Conner, one of the plaintiffs, under the name of 'H. Jones,' at $39\frac{1}{2}$ and $39\frac{1}{4}$ cents per bushel, in behalf of the defendant."

The amount charged against the defendant on account of said purchase was $3,787.50. Plaintiffs had no right to make such purchases from an individual member of the firm, even though said purchase may have been to defendant's advantage. Therefore, even

though the verdict be for plaintiffs, they cannot find against the defendants for such sum of $3,787.50, and in such case plaintiffs' demand of $4,525 should be reduced by the said sum of $3,787.50 and verdict for plaintiffs for balance, with interest at six per cent. from date of demand, should the jury find for the plaintiffs.''

This instruction is assailed by plaintiffs on the ground that, inasmuch as George Black had failed to put up the margins to protect them and they were personally bound to deliver the one hundred thousand bushels of oats, and Black ordered them to close the deal and save themselves the best they could, he thereby gave his consent for plaintiffs to act for themselves, and that they had the right to protect themselves and to close the deal in any proper and judicious manner without his consent.

Granting·that the defendants did receive the benefit of the forty thousand bushels of oats purchased by P. P. Connor, one of the plaintiffs, under the name of ''H. Jones,'' did they in trying to protect themselves, owing to their relations to defendants, act in a proper and judicial manner? The law is, that a broker or commission merchant has no right to buy from, or sell to his principal, without his knowledge and consent, and that in such case the fact that the price paid was the fair market value, and that the transaction was a fair one and free from fraud or any undue advantage, is no legal justification or excuse.

They could not occupy the dual relation as agent and principal at the same time, without the knowledge and consent of those for whom they were acting. Such contracts are said to be absolutely void as against public policy. *Chapman v. Currie*, 51 Mo. App. 40. If, as plaintiffs contend, they had the right to close out the transaction as to the grain now under con-

sideration by purchasing the necessary amount from a member of their firm, it is a matter worthy of some more satisfactory explanation on their part than that which was given as to how it happened to be purchased under the name of "H. Jones." Such mysterious and unusual transactions are not calculated to impress the ordinary observer with their fairness.

In the case of *Cameron v. Durkheim*, 55 N. Y. 425, this question was not considered by the court and is not an authority on the question now under consideration. The same may be said of *Howard v. Smith*, 56 Mo. 314; *Cockrell v. Thompson*, 85 Mo. 510; *Taylor v. Penquite*, 35 Mo. App. 389, and *Kent v. Miltenberger*, 13 Mo. App. 503. The case of *Rothschild v. Brookman*, 5 Bligh, 165, in so far as it has any bearing upon this question, is adverse to the contention of plaintiffs. There is no other point urged by plaintiffs for a reversal of the cause.

At the trial, the plaintiffs, to maintain the issues on their part, offered in evidence certified copies of two deeds of trust and one mortgage executed by the defendants on or about the fifth to the tenth day of August, 1890, on about all of their property. Two of the deeds of trust were executed by defendant George Black, and the mortgage by Clay Black, to secure the payment of certain demands in them respectively described. Defendants objected to the introduction in evidence of these deeds, on the ground that they were irrelevant, immaterial and had no tendency to prove any fact in issue. The objections were overruled and defendants saved their exceptions. The rule has long been well settled in this state by an unbroken line of decisions that where the evidence offered is admissible for any purpose, such objections are too general and should not be sustained. The ground of the objections under such circumstances

should be specific, so that when the attention of the court is called to them the objections may be obviated if possible to do so. *Margrave v. Ansmuss*, 51 Mo. 561; *Public Schools v. Risley*, 40 Mo. 358; *Clark v. People's Loan Co.,* 46 Mo. App. 248. But where the evidence offered is inadmissible for any purpose, a different rule prevails, and a general objection as to its admissibility on the ground that it is incompetent, immaterial and irrelevant, is sufficient. *State v. Meyers*, 99 Mo. 107; *Alcorn v. Railroad*, 108 Mo. 81. The deeds of trust and mortgage had no bearing whatever upon the questions at issue and were clearly inadmissible for any purpose, and the objections to their being read in evidence should have been sustained.

Defendants objected to the giving of the following instructions on behalf of the plaintiffs:

"2. That it is lawful to sell grain for future delivery, though the seller may not own any grain at the time and his only means of procuring the grain so sold for delivery is to go out in the market and buy it. That the seller of the grain has no option or choice of any day within a particular month or year, for its delivery does not alter or affect this rule."

"5. It is admitted by George Black that he authorized plaintiffs to sell one hundred thousand bushels of number 2 mixed oats for him for September delivery in St. Louis, but he claims as a defense that he never intended to deliver any oats, but simply to speculate on the rise and fall of the market prices. Now if the plaintiffs sold the oats or made contract for the sale thereof, as they claim, it is not enough to render such contracts void or defeat plaintiffs' recovery in this case, that George Black did not intend to deliver any oats. It must be shown by the preponderance of the evidence that both George Black and

the purchaser intended there should be no delivery and that plaintiffs so understood the matter at the time. In other words, it must appear from the evidence that the seller and the purchaser and the plaintiffs understood it was a gambling speculation to be settled only by the payment of differences in the market price, and that no grain was expected to be delivered."

"6. If you find from the evidence plaintiffs made contracts in behalf of defendants, or either of them, for the sale and future delivery of oats, in order to render such contract void as wagering or gambling contracts, it is necessary that it should have been the intention of both the seller and the purchasers at the time the contracts were made that no grain should be delivered or received, but that the transaction should be settled by paying or receiving the difference in the market price. If such was not the intention of both the seller and purchasers at the time contracts were made, then your verdict should be for the plaintiffs, and the burden of proving that both parties intended that no grain should be delivered at the time the contracts were made, then your verdict should be for the plaintiffs, and the burden of proving that both parties intended that no grain should be delivered at the time the contracts were made, but that the transaction should be settled by paying or receiving the difference in the market prices is on the defendants.

"7. If you believe from the evidence that defendants authorized plaintiffs to contract for them for the sale of oats for future delivery, and plaintiffs did so, and afterwards closed the transaction by defendants' direction, either by paying the losses, if any, at market prices, or by delivering to the purchasers, the contracts of others for the delivery of oats at market prices, then you are instructed that plaintiffs are entitled to recover the money paid out by them in so

closing said transaction in excess of the $5,000 received by them as margins, with a reasonable and usual commission as compensation for their services, although you may find that defendants never intended to deliver any grain, but only intended to settle by paying differences, unless you further find that the purchasers, as also the plaintiffs, at the time said contracts were made, understood that no grain was to be delivered, but that the transactions were only to be settled by the payment or receipt of the difference in the market prices, and the burden of proving this is on the defendants.''

These instructions are in line with the rule announced by this court in the cases of *Crawford v. Spencer*, 92 Mo. 498; *Cockrell v. Thompson*, 85 Mo. 510; and by the court of appeals in the cases of *Kent v. Miltenberger*, 13 Mo. App. 503; *Taylor v. Penquite*, 35 Mo. App. 389, and by the United States supreme court in the case of *Irwin v. Williar*, 110 U. S. 499, to the effect that a deal on margins is valid, though the party selling did not have the grain on hand, but depended upon going upon the market to buy for delivery, and that the broker might recover from his principal differences paid in closing out a deal, unless it was shown that the buyer with whom he dealt knew that it was an option transaction; that option deals were not gambling under the statute as it then existed, and that it made no difference that the seller did not have the grain, and that he did not in fact intend to deliver it unless these facts were known to the buyer. Unless the law as thus announced has been changed by legislative enactment, there was no error in giving these instructions.

It is claimed by plaintiffs that the oats were sold and settlement made on account thereof according to the rules and customs of the merchants' exchange in

the city of St. Louis, and that everything that was done pertaining thereto was legal and legitimate.

In 1887 the general assembly passed a law prohibiting the keeping and conducting of what were known and called "bucket shops," and prohibiting any person as agent of any corporation or person or persons from conducting such business, and making it a misdemeanor to do so. A bucket shop in the meaning of this act is declared to be "a place—other than a duly incorporated mercantile exchange—wherein are posted or published from information received, as the same occur, the fluctuating prices of stock, bonds, petroleum, cotton, grains * * * in trades-made or offered to be made on regular and lawful boards of exchange, and wherein the person carrying on the bucket shop either as principal or agent pretends to buy or sell, or goes through the form of buying or selling, then and there to any person or persons, any one of said commodities at a certain price fixed by, or according to, the aforesaid prices posted or published, but wherein neither party actually buys such commodity and neither party actually sells the same." (Laws 1887, p. 171, sec. 2).

The following section (3837 R. S. 1889) provides that all such transactions in grain, etc., in the manner and form as aforesaid, on margins for future or optional delivery, are hereby declared gambling and criminal acts, whether the person buying or selling, or offering to buy or sell, acts for himself or as agent or broker for the firm, company, corporation, association or brokers' office.

In the revision of 1889 the words "other than a duly incorporated mercantile exchange" were dropped out of section 2, acts of 1887 (sec. 3836), so that the law since then applies as well to duly incorporated merchants' exchanges as to other companies, corporations and individuals.

This law was aimed at the keepers of bucket shops and to individuals or companies engaged in dealing in futures and gambling in grain and other articles of commerce. It had no effect, and was not designed to have any, upon contracts made with reference to such transactions made between the commission merchant, the keepers of such places and their customers and patrons. But the intention of the law was to break up and prohibit such enterprises because a species of gambling and against public policy.

Section 3931, R. S., 1889, provides that: "All purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale * * * of grain, * * * either on margin or otherwise, without any intention of receiving and paying for the property so bought, or delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. Any company, copartnership or corporation, or member, officer or agent thereof, or any person found guilty of a violation of the provisions of this section, shall be fined," etc.

By the express provisions of this section of the statute the sale of any of the properties mentioned within its provisions, without any intention of delivering said property sold, and all the buying or selling or pretended buying or selling of such property on margins or optional delivery, when the party selling the same

does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, are declared to be gambling, unlawful and prohibited.

The evidence shows that the plaintiffs, at the time that they made the sales for defendants, knew that they did not have the grain on hand, and that they did not expect to have or deliver it at any time, but, whether they did or not by the terms of the statute, as defendants never, at any time, had on hand, and did not intend to deliver the oats, the contract came within its inhibition, and could not be enforced.

It was held by the supreme court of Tennessee, under a statute which declared that dealing in options should be gaming, "If either of the contracting parties, dealing simply for the margin, or on the prospective rise or fall of prices, had no intention or purpose of making actual delivery, or securing the property or thing in specie," that the act was intended to make it unlawful if either of the parties had no intention of effectuating a real purchase or sale; that the purpose and object of the statute was to suppress the evil of dealing in futures, and limit such operations to sales made in good faith, by those who wished to sell and buy; and that in making the seller responsible for the intent of the buyer and the buyer responsible for the intent of the seller, its intention and purpose was to suppress gambling by confining the business of buying and selling for future delivery in such limits as would effectually preclude the possibility of it; that the *bona fide* dealer can still operate in good faith, but he cannot do so upon any terms which do not protect the community against the pernicious and ruinous speculation in the rise and fall of prices. *McGrew v. City Produce Exchange*, 4 S. W. Rep. 38; *Burt v. Myer*, 18 Atlantic Rep. 796; *Beadles v. McElrath*, 3 S. W. Rep. 152.

The plaintiffs were parties to an illegal contract, which they are now seeking to enforce, and in which the law will not aid them. . As said in the case of *Irwin v. Williar*, 110 U. S. 499, "we are of the opinion that when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself, on behalf of either, in forwarding the transaction." So, as was said in the case of *Crawford v. Spencer*, *supra*: "The illegal ventures were carried on by the brokers, in their own names, and they were parties thereto from first to last, parties to the agreement which made the contracts illegal."

We do not intend to be understood as holding that any person may not sell any kind of personal property for future delivery, which he may not at the time have on hand, if he intends to deliver it, and has it on hand for the purpose at the time it is to be delivered under the contract; but if he does not intend to deliver it and does not have it on hand at the time it is to be delivered, and for that purpose, that he is guilty of a misdemeanor under the statute.

There are other points urged by counsel for defendant George Black, why the case should be reversed, but as what has already been said necessarily results in the reversal of the judgment as to him, it it has not been thought necessary to advert to them.

The judgment as to Clay Black is affirmed; as to George Black, reversed and the cause remanded for retrial in conformity with the views herein expressed. All of this division concur.