JAMES E. MULFORD, Respondent, v. LOUIS CÆSAR, Appellant.

St. Louis Court of Appeals, March 7, 1893

1. Account Stated: OBJECTION TO ONE OF SEVERAL ITEMS. *Held* in the course of discussion that the mere fact, that one item in an account is disputed, does not prevent the account from becoming an account stated as to all items admitted to be correct.

2. ———: SUFFICIENCY OF THE EVIDENCE. In this cause the defendant, after the rendition of the plaintiff's account to him, remained silent for two weeks. Thereafter he made some payments on the account, and promised to pay the whole of it gradually; and, finally, he stated that he owed the balance of it as a gambling debt. *Held*, that this evidence warranted the finding that an account had been stated between the parties.

3. Practice, Appellate: WEIGHING THE EVIDENCE. The finding in the trial court on a controverted issue of fact, supported by substantial evidence, is conclusive on appeal to this court in an action at law, unless it is the result of a mistaken view of the law, or clearly the result of prejudice, bias or mistake.

4. Gambling Contracts: CONSTRUCTION OF STATUTE. Even under the act of 1889 (Revised Statutes, sec. 3931), a contract for the sale of grain or shares of stock is not a gambling contract merely because of an undisclosed purpose on the part either of the buyer or the seller alone that there should not be an actual delivery of the thing sold, but simply a settlement for the difference between the market value and contract price. To invalidate the contract under the statute such a purpose on the part of one party, together with knowledge thereof by the other, is essential.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*John H. Drabelle,* for appellant.

(1) The court erred in refusing instruction number 1 offered by defendant, and holding under the law and facts that an account stated had been proved. *Railroad v. Kimmel,* 58 Mo. 83; *Brown v. Kimmel,* 67 Mo. 430; 1 American and English Encyclopedia of Law, p. 114; *Quincy v. White,* 63 N. Y. 370; *Wiggins v. Burkham,* 10 Wall. 129; 1 Story's Equity Jurisprudence [13 Ed.] sec. 526; *Waymand v. Hilliard,* 7 Bing. 101; *Mellon v. Campbell,* 11 Pa. St. 415. (2) The court erred in refusing to permit plaintiff to prove the nature of Murphy & Co.'s business. *Crawford v. Spencer,* 92 Mo. 498; *Hill v. Johnson,* 38 Mo. App.

383–392; *Williams v. Tiedeman*, 6 Mo. App. 276; *VanBlarcom v. Donovan*, 16 Mo. App. 535; *Melchert v. Tel. Co.*, 11 Fed. Rep. 193; *Lyons v. Culbertson*, 83 Ill. 38; *In re Greene*, 7 Biss. 338; *Sprague v. Warren*, 41 N. W. Rep. [Neb.] 1113; *Watte v. Wickersham*, 43 N. W. Rep. [Neb] 259; *Mohr v. Miesen*, 49 N. W. Rep. [Minn.] 862; *Boyd v. Harrison*, 41 Fed. Rep. 174. (3) The finding of a court is not sustained by the evidence. It is against the evidence. It is against the law and the evidence and the law under the evidence, and against the weight of the evidence. *Ackley v. Staehlin*, 56 Mo. 479; *Hearne v. Kane*, 63 Mo. 84; *Bruen v. Fair Ass'n*, 40 Mo. App. 425, and cases cited under point 2. (4) The court erred in refusing instruction number 5, asked by the defendant. Revised Statutes, 1889, sec. 3931–3936, as amended by acts of the Thirty-Sixth General Assembly, p. 126; *McGrew v. Produce Exchange*, 85 Tenn. 577–8.

*John H. Overall*, for respondent.

(1) If an account is delivered to a person, and he makes no objection to it within a reasonable time, it is evidence of his consent to its correctness. *McCormack v. Sawyer*, 104 Mo. 36–43; *Brown v. Kimmel*, 67 Mo. 430; *Powell v. Railroad*, 65 Mo. 658; *Shepard v. Bank*, 15 Mo. 141; *Wiggins v. Burkham*, 10 Wall. 129; *Quincy v. White*, 63 N. Y. 370–377; *Kent v. Highleyman*, 17 Mo. App. 9; *Ward v. Farrelly*, 9 Mo. App. 370. It is not necessary to prove an express promise to pay; an implied promise is sufficient. *Powell v. Railroad*, 65 Mo. 658–661; *Lockwood v. Thorne*, 1 Kernan, 170, and cases above cited. If a proper account is rendered and payments made on it without objection, there is ground for charging defendant, on the theory of an account stated. *Manion v. Carreras*, 26 Mo. App. 229–234. If one item is disputed, the account is stated as to the balance.

*Wiggins v. Burkham*, 10 Wall. 129. (2) Failure to show delivery does not of itself establish the fact that the transactions were gambling transactions; delivery may be dispensed with. *Crawford v. Spencer*, 92 Mo. 498; *Cockrell v. Thompson*, 85 Mo. 510; *Hill v. Johnson*, 38 Mo. App. 392; *Williams v. Tiedeman*, 6 Mo. App. 269. Sections 3931 and 3936 of the Revised Statutes, 1889, did not go into effect, until November 1, 1889. Declaration number 5 was therefore properly refused, as it sought to affect all the transactions in the account; those occurring before November 1, 1889, as well as those occurring after, even if it otherwise correctly stated the law, which is denied. Although defendant may not have intended to deliver or receive the stocks or grain at the time he entered into the contracts, and thereby intended to commit a crime, unless his criminal intent was known to plaintiff, it is no defense to this action. The burden of proof is on the party asserting the illegality of the contract. *Crawford v. Spencer*, 92 Mo. 498; *Cockrell v. Thompson*, 85 Mo. 510; *Hill v. Johnson*, 38 Mo. App. 392.

ROMBAUER, P. J.—This is a suit upon an account stated to recover a balance of $1,387.39, claimed to be due thereon from the defendant to the plaintiff. The answer consists of a general denial, and two special defenses, namely: *First*, that the balance sued for was the result of wagering contracts, covering a period between May 6, 1889, and September 15, 1890, and *next*, that all the purchases and sales or pretended purchases and sales of stocks, grains and other commodities, making up the account against the defendant, were made without any intention of receiving and paying for the property so bought, or of delivering the property so sold. This last defense was intended to invoke the provisions of sections 3931 and

Mulford v. Cæsar.

3936 of the Revised Statutes of 1889, which make it criminal to purchase or sell certain commodities without intent of receiving or delivering the same, and prevent a recovery in a civil action based on such transactions. The cause was tried by the court without the intervention of a jury, the trial resulting in a judgment for plaintiff for the full amount claimed. The errrors complained are that the court erred in its rulings on the evidence, and in its declarations of law.

The evidence adduced by plaintiff tended to show the following facts: He was a broker in the city of St. Louis. The defendant at various dates, and between the dates stated in the answer, gave him orders to buy or sell various commodities, such as stocks, bonds, grain and groceries, the defendant making payments on account from time to time. The last of such payments was made September 15, 1890. On the twenty-ninth day of that month, the plaintiff sent a written account of these transactions to the defendant, who also resided in St. Louis. On October 14, 1890, the defendant sent a check for $50 to the plaintiff by mail, accompanied by a letter stating: "Inclosed find check for $50; please credit my account." Eight days thereafter defendant wrote another letter to plaintiff containing this statement: "I will pay you some money every month, as much as I can spare, until paid. I explain to you my position. I lost every cent I had and even sold my stock, but will pay whenever I can spare it, and that is the best I can do." On the fifteenth of November the defendant again remitted to the plaintiff a check for $50, and wrote to him: "Inclosed find check for $50; apply to my account." Nothing appeared on the cross-examination of the plaintiff's witness tending to impair the accuracy of the account, or the effect of defendant's silence between September 29 and October 14, 1890, or the effect of defendant's

letters and remittances of October 14 and 22, and of November 15, 1890.

The defendant in his own behalf testified that he objected to one of the items of debit against him in the account, being the one of August 31, 1890, for $306.89, the day when the item accrued, on the ground that he had never authorized the purchase of the commodity mentioned; that he subsequently, and prior to the rendition of the consolidated account, again objected to it to plaintiff's clerk, and, when the plaintiff's clerk called upon him in January, 1892, for a settlement of the account, he told him that this item should not be in it. But it does not appear by the defendant's evidence or elsewhere that he did not order the *sale* of this commodity when it was actually sold out, nor does it appear that he objected to the account as a whole, after it was rendered to him, at any time prior to January, 1891. It does appear by the defendant's own evidence that he admitted that he owed the balance shown by the account as a gambling debt, but whether this admission included the transaction in the commodity resulting in a loss of $306.89 is not very clear on the evidence. Nor is it made quite clear whether it is this amount of $306.89 which the defendant disputed, as his testimony refers to an item of $369, and no such item is contained in the account. Moreover, the mere fact that one item in the account is disputed does not prevent the account from becoming an account stated as to all items admitted to be correct. *Wiggins v. Burkham*, 10 Wall. 129.

This being the evidence on the question of account stated, we cannot put the court in the wrong for refusing the defendant's first instruction to the effect that under the evidence the verdict must be for the defendant.

The court did, upon the defendant's request, give this instruction on the question of account stated: "An account stated, in law, is an account settled between the debtor and creditor therein, in which a sum of money or a balance is agreed on, and an acknowledgment by one in favor of the other of a balance or sum certain to be due, and an express or implied promise to pay the same by the one to the other; and the plaintiff in this case having sued and declared, not upon an itemized account, but upon an alleged account stated, the court, sitting as a jury, cannot find for plaintiff herein, unless plaintiff has by evidence proved an account stated between plaintiff and defendant as alleged in the petition, and, if the court believes from the evidence that an account stated has not been proved, it will find for the defendant."

And the defendant complains that the court's finding under the conceded facts is opposed to this declaration.

The defendant's silence for a period of two weeks after receiving the account; his several payments on account thereafter; his statement under date of October 22, "I will pay you some money every month, as much as I can spare, *until paid;*" his equivocal statement that he owed the balance as a gambling debt, all tend to show an account stated. *Brown v. Kimmel*, 67 Mo. 430; *Kent v. Highleyman*, 17 Mo. App. 9; *McCormack v. Sawyer*, 104 Mo. 36. His objection to one item in the account, as testified to by him, at some time anterior and subsequent to its rendition (conceding that this item does form part of the account rendered), at most raised a conflict in the evidence, which it was for the trier of the facts to solve, and which the trier of the facts under a correct declaration of law solved against the defendant. There is no complaint in the motion for new trial that the verdict is excessive. We find no error in this branch of the case.

Touching the affirmative defenses, the following facts are shown by the evidence: The defendant gave evidence tending to show that there was no intention of delivery on part of the plaintiff, nor intention of receipt on his part of any of the commodities bought and sold. This evidence consisted, first, of his own testimony as to his intentions—but there was no evidence that he communicated such intention in express terms to the plaintiff—also, next, of the following circumstances shown: Most, if not all, of the purchases and sales were made on margins, the defendant in many cases limiting the extent to which he was bound. None of the commodities were actually delivered as between plaintiff and defendant, and no delivery was ever demanded or offered. The transactions, taking the aggregate value of the commodities dealt in, amounted to several hundred thousand dollars, and the defendant was known to be a man of moderate means. The defendant also gave evidence tending to show that the orders which he gave to the plaintiff were receipted for on plaintiff's memorandum cards, each of which contained this statement: "We solicit and will receive no business, except with the understanding that the actual delivery of property bought and sold upon order is in all cases contemplated and understood."

The plaintiff, on the other hand, gave evidence tending to show that he was engaged in a legitimate brokerage business, and was ready at any time to deliver whatever commodity he either bought or sold, and would have delivered such commodities, if requested; and that all such commodities were, if not in his actual possession, yet within his actual control.

This being the substance of the evidence bearing on the inquiry of the good faith of the transaction, the court gave the following instructions on behalf of the defendant: "3. If the court, sitting as a jury, believes

from all the facts and circumstances in evidence in this case that the defendant, Louis Cæsar, employed the plaintiff, John E. Mulford, to buy and sell stocks and grains, and thereby speculate in the future prices of said stocks and grain, and that, under the contract which the plaintiff may have actually made with the third parties in filling orders, no stock and grain were intended actually to be received or delivered by the parties to such contracts, but that it was the intention of such parties merely to settle for the differences in price, then the plaintiff cannot recover in this action, and the court will find for defendant.

"4. If the court, sitting as a jury, believes from the evidence that, at the time defendant instructed plaintiff to buy and sell stocks and grain for him, it was mutually agreed or understood between them that no stock or grain was to be delivered or received in the settlement of such purchases and sales, but that they were to be settled by the payment of differences, then plaintiff is not entitled to recover, and the court will find for the defendant.

"6. In arriving at the intention of the parties to this suit in regard to the purchases and sales referred to in the testimony, the court, sitting as a jury, will consider not only the assertions and statements of the parties on the one side and the other, but also all the attending circumstances."

No instructions were given upon the plaintiff's request.

The defendant now complains that the finding of the court is opposed to these instructions under the overwhelming weight of the evidence. This argument is not based upon the proposition, that there was no substantial evidence supporting the transactions between the plaintiff and the defendant as contemplating actual delivery of the commodities, if requested, but on the

proposition that the trier of the facts should have disregarded such evidence, as opposed to all the probabilities raised by surrounding circumstances. In support of this proposition the defendant cites cases in equity, wherein the court upon appeal was dealing with the question involved as chancellors, as in *Crawford v. Spencer*, 92 Mo. 498; or in bankruptcy, where the judge deals with all the facts. *In re Green*, 7 Biss. 338. He also cites like cases from Nebraska. *Sprague v. Warren*, 41 N. W. Rep. 1113; *Watte v. Wickersham*, 43 N. W. Rep, 259, and *Mahr v. Misen*, 49 N. W. Rep. 862. In the first of these cases it was held that the plaintiff had given *no evidence* that the transaction contemplated actual delivery; in the last the judgment was affirmed on the evidence, and in the second it was reversed owing to an erroneous charge of the judge. The expressions used by the judges deciding the cases meet with our full approbation, but counsel for defendant overlooks the fact that it is not the language used by judges, but the points decided by the courts, which make precedents in the law. The finding by the trier of the facts on questions of fact controverted by substantial evidence is conclusive upon us, unless it is the result of a mistaken view of the law, or clearly the result of prejudice, bias or mistake. *Krider v. Milner*, 99 Mo. 145, 149. The question is not what finding we would make upon the record before us, but what finding the trial court has made. The weight of evidence is not for our consideration.

We see no error in the exclusion of evidence offered by the defendant, that the plaintiff's correspondent in Chicago had been denied quotations by the Chicago Board of Trade. Such evidence was not relevant to the issues on any conceivable theory. It is not pretended that the plaintiff was a party to those

proceedings, and the evidence in its very nature was of a hearsay character.

The defendant asked, and the court refused to give, the following instruction (the italics are our own): "5. If the court, sitting as a jury, believes from the facts and circumstances in evidence in this case that the purchases and sales referred to in the testimony were transactions in which it was not the intention of defendant, *whether such intention was known to plaintiff or not*, to receive or deliver actually the stocks and grain purchased and sold, but that settlements were to be made and the difference between the contract price and the market price paid in money, then said transactions were illegal and void, and constitute no ground of liability against the defendant, and the court will find for the defendant."

The defendant claims that this instruction was proper under the provisions of the first section of "an act to prohibit fictitious and gambling transactions in agricultural products, other commodities and stocks and bonds," approved May 9, 1889 (Laws 1889, p. 98), embodied in the Revised Statutes of that year as section 3931. The plaintiff contends that the instruction was improper because such is not the meaning of the law, and because, even if it were, as the law was enacted without an emergency clause, it did not go into effect until November 1, 1889, and hence could only apply to such parts of the account as accrued after the latter date. To this the defendant replies that a computation would show that the amount of credits in the account up to November 1, 1889, exactly balances the amount of debits, and hence the entire debt sued for grew out of transactions subsequent to November 1, 1889, which claim is correct in point of fact. The defendant was therefore entitled to this instruction, provided it states a correct proposition of law.

The sections of the act in question which are invoked are as follows: "Sec. 3931. All purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the shares of stocks or bonds of any corporation or petroleum, provisions, cotton, grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same, if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. Any company, co-partnership or corporation, or member, officer, or agent thereof, or any person found guilty of a violation of the provisions of this section, shall be fined in a sum not less than $300 nor more than $3,000.

"Section 3935. All contracts made in violation of this article shall be considered gambling contracts, and shall be void."

This law was enacted for the purpose of doing away with the effect of former decisions of appellate tribunals in this state, that, in order to make a contract unlawful as a wagering contract, *all parties thereto* must have intended at the time when the contract was made not to receive or deliver the commodity purchased or sold. *Kent v. Miltenberger*, 13 Mo. App. 503; *Teasdale v. McPike*, 25 Mo. App. 341; *Cockrell v. Thompson*, 85 Mo. 510, and *Crawford v. Spencer*, 92 Mo. 498, all of which so hold, were decided before this law was

enacted. · *Hill v. Johnson*, 38 Mo. App. 383, although decided, after the law went into effect, had reference to transactions occurring prior to its enactment. In construing this law, therefore, we must consider the mischief it intended to remedy in the law, as it stood prior to its adoption. The act, in making any transaction criminal and unenforceable in any civil proceeding, where either party does not intend an actual delivery of the commodity bought or sold, has reference to "intention" in a legal sense, namely an intention brought home to the other contracting party, and not to the secret intention hid in the recesses of the mind of either party. Intention in the latter sense finds no place in the law of contracts. Under the law as it now stands, it is immaterial whether the vendee intended to receive, provided he is aware that the vendor did not intend to deliver, and immaterial whether the vendor intended to deliver, if he knew the vendee did not intend to receive the commodity sold. The law also affects all middlemen. Nor is it necessary that such intention should be conveyed in express terms to the other contracting party, as the fact that it has been thus conveyed may be inferred from all the circumstances surrounding the transaction. But, in order to charge the other contracting party with knowledge of such intention, the intent with which the contract is made must be either stated to him, or knowledge of such intent on his part must be found by the jury from surrounding facts; otherwise it is *no intention* within the meaning of the law. To give the statute a construction which makes one criminally responsible for the secret and undisclosed intention of another, would be the height of absurdity. It is needless to speculate upon the proposition whether any legislature could legally pass such a law. It suffices to say that it has

not in terms passed any such law in the enactment of May 9, 1889.

It results from the foregoing that the defendant's instruction above recited was properly refused. If the instruction, instead of using the words "whether such intention was known to the plaintiff or not," had used the words "which intention was known to the plaintiff in any manner," it would have correctly applied the provisions of the law in question to the facts in evidence.

All the judges concurring, the judgment is affimed.