SCHREINER, FLACK & Co., Appellants, v. ISAAC ORR, Administrator of L. C. WILSON, Respondent.

St. Louis Court of Appeals, December 5, 1893.

1. **Gambling Contracts:** SALES OF GRAIN ON MARGINS WITHOUT INTENT TO DELIVER. Since the Act of 1889 (Revised Statutes, 1889, sec. 3931, *et seq.*) contracts for the sale of grain are void, if one of the parties thereto does not intend to receive or deliver the commodity sold, and the other party is aware of his intent—whether he shares in it or not. That statute also affects middlemen.

2. ———: ———: EVIDENCE OF INTENT NOT TO RECEIVE OR DELIVER. The intent of a party to the contract, that there shall be no delivery of the commodity, may be gathered from all the attending circumstances. And *held*, that the evidence in this cause warranted the inference.

3. Practice, Appellate: FAILURE OF TRANSCRIPT TO SHOW PURPORT OF REJECTED EVIDENCE OF APPELLANT. The court cannot review a ruling of the trial court in excluding a writing offered in evidence by the appellant, when the writing is not embodied in the transcript, and its effect is, therefore, not disclosed.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Charles F. Joy* and *Charles M. Napton* for appellants.

*F. J. McMaster* for respondent.

The court committed no error in making alterations to the instruction offered by appellants, nor in giving the instructions offered by respondent. *Mulford v. Cæsar*, 53 Mo. App. 271; *Hill v. Johnson*, 38 Mo. App. 393; *Crawford v. Spencer*, 92 Mo. 498.

BOND, J.—The appellants filed in the probate court for allowance a note for $500, made to them by L. C. Wilson, respondent's intestate, on the fifteenth day of May, 1890. This claim was allowed in the probate court, from which decision the respondent administrator appealed to the circuit court, where a verdict was rendered in his favor. The defense to the note, both in the probate and circuit courts, was that it was given for an illegal consideration, *i. e.*, for speculations on the differences in the market value of wheat bought and sold without any intention of delivery. The evidence tended to show that the appellants in 1890 bought

and sold wheat on account of said Wilson for delivery in July of that year; that these transactions were closed out in the April preceding; that no wheat was received by Mr. Wilson, or delivered to him; that the wheat in question, having been bought for July delivery, could not be delivered until that month, at which time it was delivered by the appellants to certain parties to whom it has been sold; that most of the trades made by Mr. Wilson through appellants were made upon his own order—in these cases the evidence did not show the persons with whom he was dealing; but that, when his trades were made by appellants, they were placed with four named firms, who were engaged in the business of receiving grain on consignment, and buying and selling for future delivery; and that all of his trades, whether made by himself directly, or by appellants as his agents, were placed on appellants' books, and were guaranteed by contracts made by appellants with other parties to the contract.

The appellants offered in evidence a printed notice (not set out in the record), which they claimed to have, as showing how their deliveries of the July wheat bought and sold by them for Mr. Wilson were made. The court excluded this form of notice from the evidence, to which exception was saved. The evidence also tended to show that, prior to his dealiings with appellants, L. C. Wilson had speculated on 'Change; that he was a traveling salesman, earning a salary of about $4,000, the year before his death; and that he was not connected with the milling business, and had no storehouse for the grain. The account of his transactions, as set forth on appellants' ledger, disclosed that he paid to them $300 at the beginning of his dealings. It showed various credits to him on grain bought and sold at the date of such items. The evidence showed that no wheat was ever actually delivered to him.

The errors assigned by appellants are:

*First*, the modification by the court of the following. instruction, prayed by appellants, by the addition thereto, against his exception, of the italicised words, to-wit:

"The jury are instructed that a sale of goods to be delivered in the future is valid, even though there is an option as to the time of delivery, and, although the seller has no other means of getting the goods than to go into the market and buy them; but if, under the guise of such a contract, valid on its face, the real purpose and intention of both parties is merely to speculate on the rise and fall in prices of such goods, and the goods are not to be delivered, but only differences paid between the contract and market price, then such a contract is a wager, and is void. But it is not enough to render the contract void that one party only intended by it a speculation in prices; it must be shown that both parties did not intend to deliver the goods, and that both contemplated and intended a settlement of differences in prices only.

"Upon the foregoing exposition of the law, as applicable to the defense set up in this case, the jury are instructed that, before the defense can defeat a recovery here, it has the burden of proving that both the deceased, Wilson, and also the parties from whom and to whom he bought and sold, intended no delivery of the goods, and were only speculating on the rise and fall of prices, *or that . it was the understanding between Wilson and the plaintiffs that there was to be no such delivery but such speculation only.*"

And the giving for the respondent of the following instruction:

"The court instructs the jury that, if they believe from the evidence in this case that Lewis C. Wilson, employed the plaintiffs to buy and sell grain, not

intending to receive or deliver the article bought or sold, but only for the purpose of speculating in the future price of such grain, and that plaintiffs were privy to such intent or purpose, and that, under the contracts which plaintiffs may have actually made with third parties in filling such orders, no grain was intended actually to be received or delivered by either of the parties to such contracts, but that it was the intention of both said parties merely to settle for the difference in price, and that the note sued on was given in settlement of such difference in price, then plaintiff cannot recover in this action, and the jury will find for the defendant. And the jury is also instructed that, in ascertaining the intent of the parties to the contracts or purchase and sale mentioned in the evidence in this case, they are not limited to the assertions of parties on one side or the other, but that all the attending circumstances connected with the transaction must be looked into.

"The court instructs the jury that, if they believe from the evidence that, at the time Lewis C. Wilson instructed plaintiffs to buy and sell the grain mentioned in evidence in this case, it was mutually agreed and understood between them that no grain was to be delivered or received in the settlement of such purchases and sales, but they were to be settled by the payment of differences, then plaintiff is not entitled to recover, and you will find for the defendant."

*Second.* The exclusion by the court of the evidence offered by appellants to show the form and method of their deliveries of the July wheat, bought and sold for Wilson.

.I. Touching the objection made by appellants to the modification of their instruction by the addition of the words in italics to-wit: *"or that it was the understanding between Wilson and the plaintiffs that there was*

*to be no such delivery; but such speculation only,"* we say that the act to prohibit fictitious and gambling transactions in agricultural products, etc., approved March 9, 1889, Revised Statutes, 1889, secs. 3931, 3936, was held by this court to have been designed to alter the law as it stood before this enactment, "that in order to make a contract unlawful as a wagering contract, *all the parties thereto* must have intended not to receive or deliver the commodity purchased or sold;" and to establish, by the statute in question the law that, to render such contracts void, it should only be necessary that one of the parties did not intend to receive or deliver the commodity bought or sold, and that the other party knew of this intent, whether he shared in it or not. We also held that the statute affected middlemen. *Mulford v. Cæsar,* 53 Mo. App. 274, etc. It is obvious, therefore, that, inasmuch as the record shows that all the transactions out of which the indebtedness arose took place after the passage of the above act, the trial court did not err in modifying the instruction requested by appellants so as to conform to the legislative rule. These observations also show that the court did not err in embracing the same principle in respondent's instruction.

II. It is urged by appellants that the evidence does not sustain the hypothesis of respondent's instruction, "that it was mutually agreed and understood between them (appellants and Wilson) that no grain was to be delivered or received in the settlement of such purchases and sales, but that they were to be settled by the payment of differences."

This is an action at law; it is sufficient, therefore, to sustain the finding of the jury that there should have been some substantial evidence in its support. It has been repeatedly held by the appellate courts of this state that "all the attending circumstances" of a con-

tract for purchase or sale for future delivery, as well as the statements of the parties, are evidentiary. We cannot hold from the circumstances of the contracts, the acts and doings of the parties thereunder, and their relative situations, that there was no substantial basis from which the jury could have justly inferred that it was the intention of Wilson and appellants that there should not be a delivery. The finding of the jury on this issue, under the facts and circumstances shown in this record, is not reviewable by us.

III. Appellants insist that the court erred in excluding from the evidence a form of notice of delivery, used in the delivery of the wheat at the maturity of their contracts. This notice is *not made part of the record*, and we are not apprised of its terms or contents. We cannot, therefore, adjudge its legal effect. As we have not the paper before us, we cannot say that it tended to show what appellants did with the wheat in question, nor can we hold that the trial court erred in excluding it.

The result is that the judgment herein is affirmed. All the judges concur.