STEWART, Appellant, v. HUTCHINSON, Respondent.

St. Louis Court of Appeals, June 5, 1906.

1. **GAMBLING CONTRACTS: Option Deals: Partnership Settlement.** A note given for the balance found to be due from the maker to the payee on settlement of their joint speculations in wheat, contrary to sections 2337 to 2342 of the Revised Statutes of 1899, was void, although the payee did not know that the wheat purchased in the option deals was not to be delivered.

2. ————: ————: ————: **New Contract.** Where a bank in good faith loaned money to partners who used the same in speculating in wheat options and one of the partners afterwards assumed the indebtedness of the other to the bank and received from the other partner his note for the amount assumed, the note was supported by a valuable consideration and the payee could recover on it; the debt to the bank was valid and the assumption of the valid debt was a valuable consideration.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston, Judge.*

REVERSED AND REMANDED.

*I. V. McPherson* and *H. H. Bloss* for respondent.

The confessed facts in this case stamped the business that the plaintiff and defendant were engaged in as gambling transactions, as we view it, beyond dispute. The great quantity of grain bought, the settlements made at the marginal differences in the rise and fall of the price, and the confessed fact that these parties had no use for the grain, were not looking for grain and contemplated only to speculate in the variations of the price of wheat, made it gambling within the meaning of section 2337, Revised Statutes 1899, even though the buyers alone purposed the non-delivery of the wheat. Sec. 2342, R. S. 1899; Conner v. Black, 119 Mo. 126, 24 S. W. 184; Lane

v. Logan Grain Co., 105 Mo. App. 215, 79 S. W. 722; Flack & Co. v. Orr, 55 App. 407; State v. Kenter, 178 Mo. 487, 77 S. W. 522; State v. Cunningham, 154 Mo. 161, 55 S. W. 282; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617. It has invariably been held that the broker who promotes or encourages the business of gambling in futures and then, at the same time, loans money or pays the loss of the person or persons thus assisted in the business, can not recover for such advances made or money loaned. Hill v. Johnson, 38 Mo. App. 383; McLean v. Stueve, 15 Mo. App. 317; 14 Am. and Eng. Ency. of Law (2 Ed.), p. 640, and citations; Atwater v. Manville, 81 N. W. (Wis.) 985; Plank v. Jackson, 128 Ind. 424.

*McNatt & McNatt* for appellant.

(1) A substitution of obligations is a sufficient consideration to support a promise, and where one note is given in consideration of the cancellation of another, the latter is founded on a valuable consideration. Siemans & Haske Electric Co. v. Ten Broek, 97 Mo. App. 173, 70 S. W. 1092; Zuendt v. Doerner, 101 Mo. App. 528, 73 S. W. 873. (2) Where either a plaintiff or a defendant comes into court to establish or defeat an obligation, the one who is compelled to rely on an illegal transaction connected with the obligation in suit, in order to make his cause of action or defense, such person is precluded by law, from showing his own moral turpitude, to establish or defeat a cause of action. This applies as well to a defendant as to a plaintiff. Ward v. Hartley, 178 Mo. 135, 77 S. W. 302; Roselle v. Beckermeir, 134 Mo. 380, 35 S. W. 1132; Greene v. Corrigan, 87 Mo. 359; Woolf v. Bernero, 14 Mo. App. 518; Deleon v. Trevino, 49 Tex. 89; Hoffman v. McMullen, 83 Fed. 372 (45 L. R. A. 410). (3) There is a difference, where a person loans money or credit in the first instance, to be used for

an illegal purpose, and where he advances money or credit, to cover an indebtedness of another contracted in an illegal enterprise.    In the former case there can be no recovery for the money advanced, in the latter case, there can.  Armstrong v. Bank, 133 U. S. 434.

GOODE, J.—Action on a promissory note for $2,-200 dated April 5, 1902, executed by defendant and payable to the order of plaintiff drawing interest at the rate of eight per cent from date.  In his answer the defendant admitted the execution of the note, but pleaded in defense that the consideration for it was an indebtedness contracted in gambling deals in which he and plaintiff were jointly interested.  The gambling deals were alleged to be speculations on the rise and fall of the future market values of wheat, the parties not contemplating the delivery of the wheat they pretended to purchase, but only to gamble on its future price. It is averred that the note was given by defendant for that proportion of the joint loss sustained in the ventures, which plaintiff had borne in excess of the amount of loss borne by defendant. This special defense was put in issue by a general reply. Plaintiff introduced the note in evidence  and  rested. Thereupon defendant introduced plaintiff's deposition as an admission against interest.  The deposition and other testimony would support the conclusion that plaintiff and defendant had been engaged in bucket-shop transactions with which the note in suit was connected.  Indeed, we have no doubt that their dealings were of a gambling character, consisting of marginal speculations on the market prices of wheat, without the sellers intending to deliver the wheat or the buyers to receive it.  The buyers were the two parties to this action and a man named Wilson, who was connected with the deals in some manner. But though the evidence to prove the business of the parties was of a gambling nature is satisfactory, the plaintiff swore he understood the wheat was to be delivered

whenever the buyer wanted it.  He did not swear he was trading in the expectation of deliveries being wanted or made.  The dealings in which the parties were interested began in January, 1902, and ceased by April.  They had borrowed money to use from the Bank of Aurora.  Their ventures entailed a heavy loss and when over the parties owed the bank $6,400; for which, at different times during the period of the dealing, they had given six or seven promissory notes signed by both of them.  The bank advanced the money principally on the credit of plaintiff, who was considered good and deposited collateral obligations for security.  The cashier of the bank demanded payment of the notes early in April and at that time a settlement occurred between the parties which led to the execution of the note in suit.  The indebtedness to the bank was discharged principally by the plaintiff.  Defendant sold some securities he owned and with the money thus raised, paid $400 on what he and plaintiff owed and plaintiff gave his individual note and collateral for the balance of $6,000.  Defendant's part of the indebtedness was $3,200, and as he only paid $400, plaintiff assumed $2,800 of defendant's part.  This was done pursuant to an arrangement made the day the bank was settled with and was participated in by Davis, the cashier.  That is to say, at the request of the parties Davis made whatever computations were necessary.  It was agreed at the time that plaintiff should assume and discharge the balance owing the bank and that defendant should give him negotiable promissory notes for the amount assumed by plaintiff over and above the latter's half of the indebtedness.  Thereupon, as we have stated, the partnership notes were cancelled and surrendered, plaintiff assuming the full debt to the bank and defendant executing and delivering to plaintiff twelve promissory notes for $50 each and the note in suit for $2,200, or notes amounting in all to $2,800.  Defendant paid the twelve small notes but refused to pay the large one.  He testified that when

the settlement occurred he and Stewart jointly owed the bank and that he (defendant) did not then dispute his part of the indebtedness. It is to be borne in mind that defendant paid $400 to the bank, plaintiff gave his individual note for the remaining $6,000, the bank surrendered the joint notes of plaintiff and defendant and the latter executed to the former the note in suit and the twelve small notes at the same time and as parts of one transaction. The only conflict is in regard to the extent of the settlement between plaintiff and defendant. Most of the testimony goes to show the settlement embraced nothing more than an arrangement regarding the indebtedness to the bank and was made at the request of and to satisfy that institution. But it is contended by defendant and conceded by plaintiff, that some testimony went to show the settlement of the parties litigant was really an adjustment between themselves of their losses in speculations, and that in the course of the settlement the indebtedness to the bank was adjusted. As plaintiff concedes there was such testimony, we will assume there was, though we find little or no trace of it in the record before us.

The court directed a verdict for defendant and plaintiff appealed.

Plaintiff's testimony that he was innocent of any knowledge that the transactions in which he and defendant were engaged were of a wagering character and not to be followed by deliveries of wheat, is said to have raised an issue of fact for the jury which the court erred in ignoring. Though admissions made by plaintiff on the stand regarding his knowledge of the nature of the transactions, went far to refute the notion that he believed the purchases of wheat to be genuine and not marginal dealings, we may concede, for argument's sake, that an inference fairly might be drawn in favor of his innocence, and yet it does not follow that the note in suit was valid and he entitled to a judgment on it. If he was an

innocent party, he was the only innocent one connected with the transactions. His partners and the sellers of the wheat had no thought of deliveries and intended to settle the profits and losses of the deals on differences. In construing the act of March 9, 1889 (R. S. 1899, secs. 2337 to 2342, inclusive), the Supreme Court has held that obligations arising out of option transactions, are void in the hands of a person who is a party to such transactions, even though he acted in ignorance of the fact that a delivery of the commodity purchased was not intended. In other words, that the purpose of one of the parties to a trade not to deliver or receive the property, invalidates an agreement arising out of the business. This was the interpretation given to the statutes by the decisions in Connor v. Black, 119 Mo. 126, 24 S. W. 184; s. c., 132 Mo. 150, 33 S. W. 783; Brokerage Co. v. Stevenson, 160 Mo. 516, 527, 61 S. W. 617. Those decisions changed not only the rule which prevailed before the enactment of the statutes in question, but the interpretation put on those statutes in Mulford v. Caesar, 53 Mo. App. 263, and Schreiner, etc., Co. v. Orr, 55 Mo. App. 406. As the law now stands, ᴜᴇ note in suit is void if a consideration for it must be found in the wheat speculations of plaintiff and defendant; for whatever expectation the plaintiff may have had about the delivery of the wheat, it is certain that his partners did not intend to receive or the sellers to deliver it.

We have referred to the conceded conflict in the evidence regarding the scope of the settlement which occurred when the note in suit was given. This question is important, because, if the purpose of the note was to secure a balance found to be due plaintiff from defendant on a settlement of their joint speculations, it is tainted by an illegal consideration and void. [Edwards Brokg. Co. v. Stevenson, 160 Mo. 516; Crawford v. Spencer, 92 Mo. 498, 4 S. W. 713; Schreiner, etc., Co. v. Orr, 55 Mo. App. 406; Armstrong v. Bank, 133 U. S. 433, 467 et seq.;

Pearce v. Foote, 113 Ill. 228; Barnard v. Backhaus, 52 Wis. 593.] Therefore an issue of fact is presented as to whether the note was given pursuant to a general settlement between the parties and for a balance which the settlement showed defendant owed plaintiff, or whether it was given in consideration of plaintiff's assuming the entire indebtedness to the bank, taking up the joint notes and executing his individual note in lieu of them. If the latter hypothesis is true, the present note stands on an independent footing and is a new contract not vitiated by the illegality of the partnership ventures. In such a contingency the plaintiff did not advance for defendant, money to settle losses incurred in wagering transactions; nor did defendant execute his note to plaintiff to make the latter whole for money he was out of pocket in consequence of deals in excess of what defendant had disbursed. The money was lent by the bank, as it supposed, for lawful purposes and the debt the parties owed the bank was altogether valid. If one attends exclusively to the rules of decision laid down in the books for cases like this one, the law appears to be clear. But if the facts in the cases in which recoveries have been allowed on obligations in some way connected with prohibited affairs, are compared with the facts in other cases in which recoveries have been denied, some conflict is discernible. In truth, the application of the rules has been inconsistent. Perhaps a true expression of the spirit of the law on the subject may be given by saying that the intimacy with which the agreement sued on, is bound up with the prior irregular business, is decisive of whether or not the agreement will be enforced. The important inquiry is this: Is the obligation sought to be enforced a new and independent contract? In practice this inquiry always leads to the ultimate question of whether the obligation is supported by a detached and independent consideration—a new consideration unconnected with the prohibited deals. The question of consideration

is decisive, for the reason that the obligation challenged as void always represents a new agreement made by the parties. But every agreement is not a contract. To be valid as a contract an agreement must have a consideration. Now in all the cases we have examined no question was raised that the obligation in suit was not the result of a new agreement. That was conceded, and whether or not the agreement was an enforcible contract, was to be determined by ascertaining if a consideration for it existed which was independent of prior forbidden transactions. If the present note was given to plaintiff on account of a balance coming to him on a settlement of the partnership affairs, the consideration for it was, of course, those affairs, which were unlawful. In other words, it does not represent a new and distinct contract, but is intermingled with the original undertaking. The partnership between plaintiff and defendant contemplated from the first a possible profit or loss, which should be adjusted and borne equally by them. Hence, if the note was executed pursuant to an adjustment of their affairs, it was, in effect, a continuation of the original scheme and invalid because the scheme was illegal. But plaintiff was under no duty to defendant to assume payment of the latter's portion of the indebtedness owed by the partnership to the bank, and if plaintiff consented to the assumption on defendant's promise to make him whole, and the note in suit was given as evidence of the promise, the arrangement was an entirely new agreement, which amounted to a valid contract because supported by a perfectly legal consideration, namely; plaintiff's assumption of defendant's debt. No more luminous exposition of the law of the subject can be found than the two opinions in Armstrong v. Toler, 11 Wheat. 258. The opinions are those of Judge WASHINGTON, delivered on the circuit, and of Chief Justice MARSHALL, speaking for the Supreme Court of the United States, on the appeal. We confidently refer to them as supporting our

conclusion in the present case. In them the various decisions to that date were reviewed and their determinations stated. As no change has occurred in the law since, it is sufficient to cite the reader to that authority for an elucidation of the subject. In commenting on the case Judge STORY said:

"The recent authorities since this case was decided, have not entirely cleared the subject of all difficulty. The distinction between the cases in which a recovery can be had, and the cases in which a recovery cannot be had, of money connected with illegal transactions, which seems now best supported, is this: that, wherever the party seeking to recover is obliged to make out his case by showing the illegal contract or transaction, or through the medium of the illegal contract or transaction, or when it appears that he was privy to the original contract or transaction, there he is not entitled to recover any advances made by him, connected with that contract. But when the advances have been made upon a new contract, remotely connected with the original illegal contract or transaction, but the title of the party to recover is not dependent upon that contract, but his case may be proved without reference to it, there he is entitled to recover. Mr. Evans, in his edition of Pothier on Obligations, vol. 2, appx. No. 1, pp. 1-19, has examined this whole subject with great diligence and ability. His conclusion is that money advanced to pay the debt of another, due upon an illegal transaction, may be recovered by the party lending it, from the party for whom it is advanced, if the lender was not a party to the original transaction, or it was not a part of the original scheme; although, at the time of the advance, he knew of the illegality." [2 Story, Agency (2 Ed.), pp. 425, 426, note.]

A case in its facts precisely like the one at bar, provided the settlement merely embraced the indebtedness to the bank, is Faikney v. Reynous, 4 Burrow 2069, in

which Lord MANSFIELD permitted the plaintiff to recover. Other apposite authorities are Farmer v. Russell, 1 B. & P. 296; Planters Bank v. Union Bank, 16 Wall. 482; McBlair v. Gibbes, 17 How. 232; Brooks v.Martin, 2 Wall. 70; Armstrong v. Bank, 133 U. S. 433, 469; Hoffman v. McMullen, 83 Fed. 372; 45 L. R. A. 410, 417. Perhaps cases may be found which would warrant a recovery by plaintiff even if the note was given for a balance due on a settlement of the losses of their joint ventures. If there are such adjudications we will not follow them; for we consider the rule to be otherwise in this and most jurisdictions. It is plain to us that the law did not preclude these parties from entering into a binding arrangement for the settlement of what they owed the bank, an innocent lender, merely because they had borrowed the money for gambling purposes.

On another trial of the case the jury should be instructed in accordance with the views expressed in this opinion. The judgment is reversed and the cause remanded. All concur.